NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM C. MARTUCCI AND WHITE CORPORATIONS I-X,<br><br>Plaintiffs,<br><br>v.<br><br>PROCTER & GAMBLE, INC., ET AL,<br><br>Defendants. | Civil Action No.: 15-4434 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant B&G Foods Inc. ("B&G" or "B&G Foods"). (ECF No. 45, "Def's. Br."). Plaintiff opposes this Motion. (ECF No. 86, "Pl's. Opp. Br."). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, B&G's Motion is granted.

## BACKGROUND

Plaintiff William C. Martucci is a *pro se* litigant who was granted *in forma pauperis* status. (ECF No. 2). Plaintiff's business, United Grocers Clearing House, Inc., which is "now known as Retailers Marketing Group, Inc. ("RMG")" is a coupon clearinghouse. (ECF No. 1 ("Compl.") ¶ 15). According to Plaintiff, "RMG performs processing services in the field of vendor coupon representation, issues payments and is [a] fully approved and authorized clearinghouse for vendors' coupons by all manufacturers listed in [the] Complaint." (Ibid.).

Plaintiff claims that B&G Foods is under contract with Defendant Inmar, Inc. ("Inmar"),

a "redemption agent for various manufacturers' vendor coupons" to "perform coupon processing services on [the manufacturers'] behalf." (Id. ¶ 13-14). Plaintiff states that Inmar authorized him to be a "fully approved clearing house for vendor coupon redemption" and that "[t]his has been in effect for nearly forty (40) years." (Id. ¶ 18).

B&G Foods is "a publicly-traded company . . . which sells well known consumer [food] brands." (Def's. Br. at 2). Although Plaintiff has named B&G Foods as a Defendant, this company is only referenced twice in the Complaint. Specifically, "[at paragraph] 7, Plaintiff alleges that B&G Foods was a client of Inmar. [At paragraph] 14, he contends that B&G Foods issues vendor coupons. That is all." (Id. at 3).

Notwithstanding the lack of any direct allegations against B&G Foods, Plaintiff seeks relief as against B&G Foods, along with all other defendants, for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) conversion, (4) negligent misrepresentation, (5) conspiracy, (6) fraud, and (7) restraint of trade. (Compl. at 7-22). On September 22, 2015, B&G Foods filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def's Br. at 1). Plaintiff submitted an Opposition which was not received by this Court until October 26, 2015, a week after Plaintiff's Opposition was due. (See ECF No. 86). Given Plaintiff's *pro se* status, this Court will nevertheless consider Plaintiff's Opposition.

## LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

When reviewing the sufficiency of a complaint filed by a *pro se* litigant, the Court has "a special obligation to construe his complaint liberally." *See Higgs v. Atty Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) (quotations omitted). That said, even a *pro se* litigant's Complaint is subject to dismissal if a Court, after liberally construing same, finds that the plaintiff has not met the threshold pleading standards outlined by the Federal Rules of Civil Procedure and case law. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) . . . counsel[s] dismissal.").

## ANALYSIS

3

### A. Breach of Contract

In Count One of the Complaint, Plaintiff alleges that Defendants Proctor & Gamble ("P&G"), Inmar, and NCH Marketing Services, Inc. ("NCH") signed contracts with Plaintiff, which were subsequently "not honored." (Compl. ¶ 22-24). To survive dismissal of a breach of contract claim under New Jersey law, a plaintiff must allege "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1084, 1088 (N.J. Super. Ct. App. Div. 1985)).

B&G Foods contends that Plaintiff "does not allege, because he cannot [allege], any contractual relationship with B&G Foods." (Def.'s Br. at 5). Indeed, Plaintiff has not alleged that he has entered into a contract with B&G Foods. Instead, Plaintiff alleges that "William C. Martucci's contract with Inmar, Inc. as a redemption agent for the companies listed in number 7 of this complaint, are in full force as if each company was in a direct contractual agreement with William C. Martucci." (Compl. ¶ 28). Plaintiff's conclusion is not supported by the facts or case law. Indeed, Plaintiff has failed to show how he is in contractual privity with B&G Foods, based on the alleged Inmar-B&G Foods contract.[1]

---

[1] In his Opposition, Plaintiff avers that he "has represented B&G Foods, Inc. for over 20 years in the field of coupon redemption in marketing analysis." (Pl's. Opp. Br. at 12). Plaintiff further claims that he "manufactured promotional Tee Shirts for B&G Foods in the approximate amount of 55,000 tee shirts" and that he was "B&G Food's agent in the 1990's for the redemption of coupons and marketing reports and promotional giveaways." (Id.). In an attempt to substantiate these statements, Plaintiff attached pictures of B&G tee shirts to his Opposition Brief. (Pl's. Opp., Exh. D). This Court fails to understand how the photos of t-shirts evidence any contract between B&G and Plaintiff. In any event, even if this Court were to accept these allegations as true, Plaintiff has not alleged that B&G somehow breached this alleged contract.

4

It appears that Plaintiff attempts to argue that he was a third-party beneficiary of the alleged contracts between B&G and Inmar. (Pl's. Opp. Br. at ¶¶ 4-11). Indeed, Plaintiff states that he has a "[b]ridge contract" with B&G, and that they have had a "long business relationship as proven by B&G Foods having paid the Plaintiff through Inmar." (Pl.'s Opp. Br. ¶¶ 6-8). Specifically, Plaintiff reasons:

> B&G Foods, Inc. is under contract with Inmar, Inc., to represent B&G Foods in vendor couponing redemption. B&G, through Inmar, paid $1,159.33 to Plaintiff for coupons issued by B&G. B&G Foods, Inc. owes $36.22 for unpaid invoices to Plaintiff. Therefore, B&G, Inmar and Plaintiff have contracts between them for coupon redemption and reimbursement of funds.

(Id. ¶ 5). Plaintiff also attached an ambiguous document to his Opposition, which he purports to be related to B&G coupons, without providing any information as to the significance or history of this document. (See Compl., Exh. A).

Notwithstanding the above, Plaintiff has failed to show how he was in fact a third party beneficiary of any purported contract between B&G and Inmar. Unless a third party to a contract can show that the contract was "'made for the benefit of said third party within the intent and contemplation of the contracting parties . . . . [h]e has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance.'" *First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. & Loan Ass'n of Norristown*, 610 F.2d 164, 170 (3d Cir. 1979) (quoting *Gold Mills, Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (N.J. Sup. Ct. Law Div. 1972)).

Here, Plaintiff has not plead or otherwise argued that B&G and Inmar intended to enter into a contract for Plaintiff's benefit. Nor has Plaintiff shown that he was ever contemplated during any alleged contract negotiations between Inmar and B&G. Moreover, Plaintiff has not directed

5

this Court to any contractual language naming him as a beneficiary of contracts between B&G and Inmar. Therefore, Plaintiff appears to be, at best, an "incidental beneficiary with no contractual standing." *Kersey v. Becton Dickinson & Co.*, 433 Fed. App'x. 105, 109 (3d Cir. 2011) (unpublished); *see also Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982) ("The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing."). For these reasons, Plaintiff has failed to plead the threshold showing of a breach of contract claim, namely, the existence of a contract. As such, Plaintiff's breach of contract claim against B&G is dismissed.

## B. Breach of the Covenant of Good Faith and Fair Dealing

In Count Two, Plaintiff alleges a breach of the covenant of good faith and fair dealing. (Compl. at ¶¶ 26-29) The New Jersey Supreme Court has made clear that, "'[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.'" *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (2002) (quoting *Noye v. Hoffman-La Roche, Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990)); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). As discussed above, Plaintiff has failed to sufficiently plead the prerequisite contractual relationship with B&G Foods. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed as against B&G Foods.

## C. Conversion

Plaintiff also attempts to bring a claim for conversion against Defendants. "Conversion is the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with

6

such title." *Schenkel v. Flaster*, 54 Fed. App'x. 362, 365 (3d Cir. 2002) (unpublished) (citing *Mueller v. Technical Devices Corp.*, 84 A.2d 620, 623 (N.J. 1951)). However, Plaintiff has failed to make any showing of the required elements of conversion. Rather, Plaintiff merely recites the elements for conversion, as follows:

> Upon information and belief the Defendants are illegally, wrongfully and unlawfully exercising dominion and control over funds rightfully belonging to the plaintiff, which actions constitute an illegal tortuous [sic] conversion of funds. Defendants cloistered a conversation [sic] by not allowing Plaintiff to prove by documentation William C. Martucci's position as an authorized clearinghouse.

(Compl. ¶¶ 31-32). Plaintiff does not plead any specific facts to support these allegations, and the above "[t]hreadbare recitals of the elements of a cause of action" are insufficient to state a cause of action for which relief may be granted. *Iqbal*, 556 U.S. at 663 (internal citations omitted); *see also Twombly* 550 U.S. at 544 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Accordingly, Plaintiff's conversion claim against B&G Foods is hereby dismissed.

### D. Negligent Misrepresentation

Plaintiff alleges that Defendants are liable for negligent misrepresentation. (Compl. ¶ 35-37). This Court will also construe Plaintiff's allegations as raising a claim of breach of fiduciary duty. *See Higgs*, 665 F.3d at 339.

It is well established that "under New Jersey law negligent misrepresentation requires a showing that defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." *Highlands Ins. Co. v. Hobbs Grp., LLC.*, 373 F.3d 347, 351 (3d Cir. 2004) (citing *Karu v. Feldman*, 574 A.2d 420 (N.J.

7

1990)). Plaintiff has failed to plead, with any sort of specificity, that B&G Foods met the aforementioned requirements for negligent misrepresentation. Instead, Plaintiff states that:

> Upon information and belief P&G, Inmar, NCH and other listed manufacturers violated "Uberimae Fidel" [sic] that states one must act in utmost good faith and requires making known all material facts influencing the contract. The Defendants did not maintain a fiduciary relationship with William C. Martucci. All parties must have equal knowledge of a matter in conflict.

(Compl. ¶ 36).

As stated above, Plaintiff has not plead a contractual relationship with B&G Foods. Thus, the doctrine of *uberimmae fidei* would not apply to B&G Foods, and in any event, this doctrine is inapposite to Plaintiff's claim of negligent misrepresentation. Moreover, Plaintiff has not plead any facts to support his argument that B&G Foods was negligent in providing Plaintiff with false information and that Plaintiff, to his detriment, relied on this information. For these reasons, Plaintiff's negligent misrepresentation claim against B&G Foods is dismissed.

As to Plaintiff's breach of fiduciary duty claim, Plaintiff argues that "the Defendants did not maintain a fiduciary relationship with William C. Martucci." (Compl. ¶ 36). "A fiduciary relationship arises under New Jersey law when 'one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.'" *Indus. Mar. Carriers (Bahamas), Inc. v. Miller*, 399 Fed. App'x. 704, 710 (3d Cir. 2010) (unpublished) (citing *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002)). Such relationship bestows upon the fiduciary "'a duty of loyalty and a duty to exercise reasonable skill and care' on behalf of the person to whose benefit the fiduciary acts." *Id.* (quoting *McKelvey*, 800 A.2d at 860). Plaintiff has not plead anything to support the assertion that there was a fiduciary relationship between

8

him and B&G Foods. In fact, there is nothing in Plaintiff's pleadings that suggests that B&G Foods was under any sort of "duty to act for or give advice for" Plaintiff's benefit. *Miller*, 399 Fed. App'x at 710. Therefore, because Plaintiff has failed to establish the existence of a fiduciary relationship between himself and B&G Foods, Plaintiff's claim for breach of fiduciary duty against B&G Foods is dismissed.

**E. Conspiracy**

Plaintiff further alleges that Defendants conspired against him. (Compl. at 12-18). In order to bring a conspiracy claim in New Jersey, a plaintiff must show "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. Ch. 1953)), *modified on other grounds*, 109 A.2d 19 (N.J. Sup. Ct. App. Div. 1954)). Furthermore, New Jersey courts have held that a complaint alleging conspiracy "must also contain at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn. . . . This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." *Lynn v. Christner*, 184 Fed. App'x 180, 184-85 (3d Cir. 2006) (unpublished) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005)) (internal citations omitted).

However, Plaintiff limits most of the allegations as to his conspiracy claim to specific Defendants, and excludes B&G Foods from many of these claims. For instance, Plaintiff states that "Procter & Gamble violated the Security and Exchange Commission Act of 1934" (Compl. ¶

9

39), "Proctor and Gamble conspired with Inmar, Inc. to void all coupon contracts with William C. Martucci" (Compl. ¶ 40), and "Inmar corporate officers in conjunction with P&G corporate officers conspired to cancel William C. Martucci's authorizations as a coupon clearinghouse" (Compl. ¶ 45). Accordingly, these claims fail to allege how B&G Foods was involved in any conspiracy against Plaintiff. If anything, these allegations seem to insinuate that B&G Foods was somehow the victim of Inmar's allegedly wrongful behavior, not a wrongdoer. (See Compl. ¶ 41) ("Inmar did not notify the manufacturers they represent of their intention to void any and all contracts that pertain to [Plaintiff].").

While Plaintiff alleges that "Defendants conspired to set a reimbursement minimum for shipping costs that is [sic] reimbursed to retailers and clearing houses" and that "most all Defendants have conspired to set the maximum rate they will reimburse for coupon shipments," (Compl. ¶ 42), he has not plead that B&G Foods specifically agreed to engage in underlying unlawful acts. Rather, Plaintiff makes sweeping statements that Defendants "conspired" to set these prices without providing any substantive information that would give rise to a "reasonable inference of a conspiracy." *Lynn*, 184 Fed. App'x at 184-185.

Accordingly, this Court finds that Plaintiff has failed to plead a conspiracy claim under New Jersey law against B&G Foods, and Plaintiff's conspiracy claim as against B&G Foods is hereby dismissed.

### F. Fraud

Count Six of the Complaint purports to bring forth fraud claims against Defendants. "To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material

misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 367–368 (N.J. 1997)). The Federal Rules of Civil Procedure provide a heightened pleading standard for fraud claims, requiring a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. For example, a Plaintiff alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d. at 200.

Plaintiff has failed to plead any of the requirements of a fraud claim. Specifically, Plaintiff has not identified even "a single misrepresentation of material fact" that B&G Foods allegedly made. Accordingly, Plaintiff's fraud claim is dismissed as against B&G Foods.

### G. Restraint of Trade

Plaintiff also alleges that Defendants violated Section 1 of the Sherman Antitrust Act by setting the aforementioned reimbursement minimums and maximums (Compl. ¶ 42), "monopolizing coupon trade" (Id. ¶ 51), and because Defendants "have a relationship of doing coupon business and are joined together with other types of marketing businesses." (Id. ¶ 52.) To defeat dismissal of a Section 1 claim, a plaintiff must sufficiently plead:

> (1) that the defendants contracted, combined, or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of that conspiracy.

*Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81–82 (3d Cir.1977).

11

Plaintiff has only made broad allegations as to B&G Foods' role in this alleged anticompetitive behavior, and as such, has ultimately not plead that: (1) B&G Foods conspired with the other Defendants to set these minimum and maximum reimbursement rates; (2) that the prices B&G Foods and the other Defendants allegedly set produced anti-competitive effects; (3) that this purported agreement was illegal; or (4) that Plaintiff was injured as a result of this agreement. Moreover, as stated above, the majority of Plaintiff's claims regarding anticompetitive activity on the part of Defendants specifically omit B&G Foods; instead, the claims specifically mention certain other Defendants, such as P&G, NCH, and Inmar. Plaintiff has therefore failed to show that he suffered an antitrust injury under 15 U.S.C. § 1 as a result of B&G's actions.

Plaintiff also claims that "Defendants are monopolizing coupon trade; a violation of Sec. 2 of the Sherman Anti-Trust Act." (Compl. ¶ 51). In order to bring a Section 2 claim, a plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571 (1966)). The injury prong requires a showing that: "(1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57 (3d Cir. 2010) (quotations omitted). Plaintiff has failed to sufficiently plead these elements.

Plaintiff has not plead that B&G Foods was in "possession of monopoly power in the relevant market," *Eastman Kodak Co.*, 504 U.S. at 481, as his only allegation regarding market share was made in regards to NCH and Inmar, who allegedly control "over 90% of all coupon redemption in the United States." (Compl. ¶ 43).[2] Nor has Plaintiff plead that B&G Foods engaged in the "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co.*, 504 U.S. at 481.

Lastly, the Court notes that Plaintiff alleges that "Defendants violated 15 U.S.C. § 28." (Compl. ¶ 67). However, because this statute was repealed in 1984, the Court will not address these claims. See Pub. L. 98-620, § 402(11), 98 Stat. 3358 (1984). Accordingly, Plaintiff has failed to plead that B&G Foods engaged in anticompetitive activity that resulted in a restraint of trade, and this count is dismissed against B&G Foods.

## CONCLUSION

For the above reasons, the Court grants Defendant B&G's Motion to Dismiss. (ECF No. 45.) An appropriate Order accompanies this Opinion.

DATED: November _____, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff also claimed that "Inmar and NCH control approximately ninety-five percent (95%) of the total vendor coupon redemptions, reclusive of P&G coupons." (Compl. ¶ 16).

13