WILLIAM C. MARTUCCI
3 DUNDAR ROAD
SPRINGFIELD, NJ    07081
973-467-9330
IN PRO SE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| WILLIAM C. MARTUCCI, RETAILERS MARKETING GROUP, INC., and WHITE CORPORATION I-V, | CIVIL ACTION |
| | SECOND AMENDED VERIFIED COMPLAINT |
| PLAINTIFFS, | and |
| v. | DEMAND FOR JURY TRIAL |
| PROCTER & GAMBLE, INC., A.G. LAFLEY, KRISTY HERSHBERGER, RALPH MARESCO, INMAR, INC., DAVID MOUNTS, RICH SCHMIDT, CAROLINA MARKETING SERVICES, INC. NESTLE SA & USA, SC JOHNSON & Son, INC., GEORGIA PACIFIC CORP., ABBOTT LABS, INC., R.J. REYNOLDS TOBACCO, MERCK CONSUMER CARE, BAUSCH & LOMB, PHILIP MORRIS USA, DOLE PACKAGED FOODS CO., RECKITT BENCKISER, DPS HOLDING (DR. PEPPER), PINNACLE FOODS CORP., PEPSI-COLA NORTH AMERICA, B & G FOODS, INC., PROMOTION IN MOTION, AMERICAN SNUFF, UNITED STATES SMOKELESS TOBACCO CO., FRITO LAY, COMMONWEALTH/ATADIS, INC., AMERICAN LIFELINE, INC., SCHWABE NORTH AMERICAN CO., NATURES BOUNTY/REXALL DRUG INC., WELLS ENTERPRISES, SUPERMARKET COUPON DIRECT, JOSE ALMONTE, BLACK COMPANY I-XX, JOHN DOE I-X and JANE DOE I-X. | CASE NO. 2:15-cv-04434 JLL-JAD<br><br>HONORABLE JUDGE JOSE L. LINARES U.S.D.J. |
| DEFENDANTS. | |

Plaintiff William C. Martucci Pro Se, Retailers Marketing Group, Inc. and White Corporations I-V, by way of this Second Amended Verified Complaint and Demand for Jury Trial against Defendants Procter & Gamble, Inc., A.G. Laffey, Kristy Hershberger, Ralph Maresco, Inmar, Inc., David Mounts, Rich Schmidt, Carolina Marketing Services, Inc., Nestle SA and USA, S.C. Johnson & Son, Inc., Georgia Pacific Corp., Abbott Labs, Inc., R.J. Reynolds Tobacco, Merck Consumer Care, Bausch & Lomb, Philip Morris USA, Dole Packaged Foods Co., Reckitt Benckiser, DPS Holding (Dr. Pepper), Pinnacle Foods Corp., Pepsi Cola North America, B & G Foods, Inc., Promotion in Motion, American Snuff, United States Smokeless Tobacco Co., Frito Lay, Commonwealth Brands, Inc., American Lifeline, Inc., Schwabe North American Co., Natures Bounty/Rexall Drug Inc., Wells Enterprises, Super Market Coupon Direct, Jose Almonte, Black Company I-XX, John Doe I-X and Jane Doe I-X.

**TABLE OF CONTENTS**

                                                                    PAGE

TABLE OF AUTHORITIES ........................................... i

JURISDICTION AND VENUE ......................................... 1

INTRODUCTION ................................................... 1

STATEMENT OF FACTS ............................................. 4

POINTS TO CONSIDER ............................................. 5

    Point I .................................................. 5
         The Coupon Business

    Point II ................................................. 7
         Third Party Beneficiaries Act 1999

COUNTS ONE THROUGH NINE ....................................... 14

PRELIMINARY STATEMENT ......................................... 37

LEGAL ARGUMENTS ............................................... 39

    I.    Plaintiffs have Adequately Pled the Existence ......  39
          of an Enforceable Contract/Third Party Beneficiary.

          A.    The Complaint Alleges Sufficient Mutuality
                of Plaintiffs and Defendants in the Contract

    II.   Plaintiffs Claim for Estoppel is Adequately Pled .... 45
          and Should Not Be Dismissed For Failure to State
          a Claim.

    III.  Plaintiffs Claim for Third Party Beneficiary is ..... 47
          Adequately Pled and Should Not Be Dismissed for
          Failure to State a Claim.

                Third Party Beneficiary Act of 1999

    IV.   The Statute of Frauds Does Not Bar Plaintiffs ....... 49
          Second Amended Complaint.

TABLE OF CONTENTS continued

  V. Motion to Dismiss by Individual Defendants .......... 51
    A.G. Lafley, Kristy Hershberger and Ralph
    Maresco Pursuant to Fed. R. Civ. P. 12(b)(1)
    and Fed. R. Civ. P. 12(b)(6).

  VI. Defendants Reckitt Benckiser; Philip Morris ......... 62
    LLC ("Georgia Pacific"); Bausch and Lomb ("BL");
    Abbott/Ross Labs, Inc. ("Abbott"); and
    collectively, the "Manufacturer Defendants"
    filed a Motion to Dismiss under Fed. Rule 2(b)(6).

CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2 ............... 69

## TABLE OF AUTHORITIES

ALA Inc. v. CCAIR, Inc., 29 F.3d 855 (3d Cir. 1994).

Allied Equipment Corp. v. Litton Saudi Arabialto, Supra. 7 Cal. 4th AT 510-1.

Annunziata v. Miller, 241 N.J. Super. 275 (Ch. Div. 1990).

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Ashcroft v. Iqbal, 550 U.S. 662 (2009).

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929
    (2007).

Butt v. United Brotherhood of Carpenters & Joiners of America, No. 09-4285, 2010 W.L.
    2080034 (E.D. PA May 19,2010).

Cargill, Inc. v. Monfort. 479 U.S. 104, 113, 107, S.Ct. 484, 93LEDZd4276 (1986).

Carlsen v. Masters, Mates etc., 80 N.J. 334 (1979).

Coastal Group, Inc. v. Westholme Partners, Case No. Civ.A. 94-3010(MTB), 1996 WL
    33545605 (D.N.J. October 3, 1996).

Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 8C, 84 (1957)
    (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S.
    544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

DCD Programs, Ltd. v. Leighton, 833 F. 2d 183, 186 (9th Cir. 1987.

Diaz-Bisio v. Municipal of San Juan, 2009 U.S. Dist. Lexis 100841, (D.P.R.
    Oct. 28, 2009).

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 9th Cir. 2003)
    (citing Foman v. Davis, 371 US 178, 182 (1962)).

Evan Arthur Hook, et al., v. State of Arizona, Department of Corrections, No. 891-1552,
    971 F. 2d 1012 (Sept. 1, 1992).

Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d, 1204, 1207,
    (9th Cir. 1996).

Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002).

Foman v. Davis, 317 U.S. I78, 182, 83 S. Ct. 227, 230 (1962).

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. (2009).

Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (quoting Scheuer v. Rhodes, 416, U.S. 232, 236 (1974).

Gonzalez v. King SooperslKroger, Inc., #76, No. 14-CV-00773-KMT, 2014 WL 2862262 (D. Colo. June 24, 2014).

Graziano v. Grant, 326 N.J. Super. 328 (App. Div. 1999).

Hedges v. United States, 404 F.3d 744 (3d Cir. 2005).

Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co., 611 F. Supp. 665 (D.N.J. 1985).

Henkels & McCoy, Inc. v. Adochio, 138 F.3d491 (3d Cir. 1998).

Hertz Furniture Sys. LC v. Virco MFS Corp., No.2:13-CV-09474 (C.D. Cal. Filed Dec. 26, 2013).

Higgs v. Attorney General of the United States, 655 F.3d 333, 339 (3d Cir. 2011)

Hilton Hotels Corp. Texas Occupational Injury Ben. Plan v. Jurss, CIV.A. H-07-3104, 2007 WL 2987977 (S.D. Tex. Oct. 10, 2007).

Hoblin v. Wyckoff General Supply Co., Inc., 42 N.J. Super. 364, 126 A.2d 365 (App. Div. 1956).

In re -Dur Antitrust Litigation, 338 F. Supp.2d 517 (D.N.J. 2004).

In re Total Containment, Inc., 335 B.R. 589 (Bankr. E.D. Pa. 2005).

Interstate Circuit v. United States.

Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).

Jurista v. Amerinox Processing, Inc., 492 B.R. 707 (D.N.J. 2013).

Kahn v. Massler, 140 F. Supp. 629 (D.N.J.), aff'd, 241 F.2d 47 (3d Cir. 1957).

Klacko, et al. v. Diamond Foods, Inc., No.9:14-DV-80605 (S.D.Fla. complaint filed on Jan. 3, 2014).

Krakowski v. Eurolynx Properties, Ltd., (1955)

Lockhart v. Osman, (1982) UR57.

Lucas v. Dept. of Corrections, 66 F.3d 245,248 (9th Cir. 1995).

Massey v. Armco Steel Co., 652 S.W. 2d 933934 (Tex 1983).

Maureen C. Gustafson v. Wachusett Regional School Dist., 64 Mass. App. Ct. 803
    (Oct. 20, 2005).

Miller v. Miller, 97 N.J. 154 (1984).

MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729 (D.N.J. 2008).

Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

Nawyn v. Kuchkuda, 43 N.J. Super. 95, 127 A.2d 897 (App. Div. 1956).

Owens v. Kaiser Found Health Plan, Inc., 244 F. 3d 708, 712 (9th Cir. 2001).

Rainbow Apparel, Inc. v. KCC Trading, Inc., Case No. 9-CV-05319, 2010 WL 2179146.

Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc.,
    Civ. No. 08-4764 (NLH), 2009 WL 1085737 (D.N.J. Apr. 20, 2009).

Sanders v. Vautier, (1842.

Sands v. McCormick, 502 F. 3d 263, 268 (3d Cir. 2008).

Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 W.W. 2d 854,858 (Tex. 1969).

Seaver v. Ramson, 224, NY 233, 120, NE 639 (1918).

Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J. Super. 282 (App. Div. 1979).

Swanson v. U.S. Forest Serv., 87 F.3d 339, 343(9th Cir. 1996).

Talwar v. Creative Labs, Inc., No. CV 05-3375, 2007 WL 1723609 (C.D. Cal. June 14, 2006).

Thompson v. Van Hise, 133 N.J.L. 524, 45 A. 2d 182 (1946).

T-Red Properties, Inc. v. Bautista, 2006 WL 1519575 (Ch. Div. 2006).

United States v. Arnold, Schwinn & Co., 388 U.S. 365 (1962).

United States v. Socony-Vacuumoile Co., 310 U.S. 150,221, S.Ct. 811, 84X (1940).

United States v. Webb, 655 F. 2d 977, 979 (9th Cir. 1981)

VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994).

Weichert Co. Realtors v. Ryan, 128 N.J. 427 (1992).

With v. O'Flanagan, (1936) CH575.

Wittner v. Metzger, 72 N.J. Super. 438 (App. Div. 1962).

[Intentionally Left Blank]

**RULES**

Fed. R. 8 (a)(2)

Fed. R. 12 (b)(6)

Fed. R. Civ. P. 8(a)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 15 (A)(2)

Fed. R. Civ. P. 41(A)(1)(A)(i)((B)

18 U.S.C. §§ 1961-1968 (RICO)

42 U.S. Code § 1985 (3)

Act 15 U.S.C.  A § 1 ET Seq

Clayton Act 15 U.S.C. § 26

Clayton Antitrust Act 15 U.S.C. Rules 12-27

Criminal Law Act 1977

Federal Trade Commission Act, Section 5 (Anti-competition Section)

New Jersey Consumer Fraud Act

Security and Exchange Commission Act of 1934

Sherman Act Antitrust Act 15 U.S.C. R. 1 Sec.1

Sherman Antitrust Act 15 U.S.C.  A R. 1 ET Seq.

Sherman Antitrust Act 15 U.S.C. Rules 1-7.

Third Party Beneficiaries Act 1999

U.S. Code § 15 Chapter I

## STATUTES

28 U.S.C. § 1331

28 U.S.C. § 1332

N.J.S.A. 25:1-5(e)

## OTHER AUTHORITIES

Third Party Beneficiary Act of 1999

Sherman Antitrust Act (Sherman Act, 26 Stat. 209, 15 U.S.C. §§ 1–7)

Samuel Williston, Williston on Contracts, § 318A, at pp. 563-65 (4th ed. 1990)

http://www.wsj.com/articles/p-g-ceo-takes-responsibility-for-companys-performance-1444760685

http://www.prweb.com/releases/2014/11/prweb12294695.htm

http://www.blg.com/en/media/dealsandsuits_479

http://www.valpak.com/media/press-releases/2015/savings-inmar-announce-strategic-partnership.jsp

## **JURISDICTION AND VENUE**

A. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, 1332 and 18 U.S.C. 1964.

B. Venue of this action is proper under 18 U.S.C. § 1965(A) and 28 U.S.C. § 1391.

C. In brief summary this Amended Verified Complaint seeks judgment against the Defendants for Breach of Contract, Breach of the Implied Covenant of Good and Fair Dealings, Conversion, Restraint of Trade, Conspiracy, Fraud and Negligent Misrepresentation.

## **INTRODUCTION**

An additional Plaintiff to Civil Action 2:15-cv-04434 in the Second Amended Complaint is Retailers Marketing Group, Inc. that will be represented by counsel. The Second Verified Amended Complaint is seeking equitable relief for damages to the Plaintiffs.

The following Defendants have been dismissed from the Complaint with prejudice: NCH Marketing Services, Inc., The Coco-Cola Co., Hershey Foods Corp., CSC Brand, LP (Campbell's), Dannon Corp. and Church & Dwight Corp.

The Second Amended Complaint has added the following twelve

Defendants:

Carolina Marketing Services, ("CMS") 635 Vine St., Winston-
    Salem, NC 27101,

American Snuff/R.J. Reynolds, 401 N. Main St., Winston-Salem, NC
    27101,

United States Smokeless Tobacco Co./Altria Corp., 6601 W. Broad
    St., Richmond, VA 23230,

Frito Lay, 7701 Legacy Dr., Plano TX 75024,

Commonwealth - Atadis, Inc., 5900 N. Andrews Ave., #1100, Fort
    Lauderdale, FL   33309,

ITG Brands, 714 Green Valley Rd., Greensboro, NC 27408-7018,

American Lifeline, Inc., 138 First St., Baraboo, WI 53913,

Schwabe North American Co., 825 Challenger Dr., Green Bay,
    Wisconsin 54311,

Natures Bounty/Rexall Drug Inc., 110 Orville Dr., Bohemia, NY
    11716,

Jose Almonte, 86-02 Northern  Blvd., Jackson Heights, NY 11372,

Supermarket Coupon Direct, 86-02 Northern Blvd., Jackson
    Heights, NY 11372,

Wells Enterprises, One Blue Bunny Dr., Le Mars, IA 51031.

The Second Amended Complaint was filed by William Martucci,

a Pro Se litigant; therefore the Court has a "special obligation

to construe this complaint liberally".

    Higgs v. Attorney General of the United States, 655 F.3d
    333, 339 (3d Cir. 2011).

## POINTS TO CONSIDER

### POINT I

### THE COUPON BUSINESS

The following is a brief explanation of the coupon business.

Cents-off coupons are issued primarily by packaged-goods manufacturers as a promotional technique designed to increase consumer purchases of particular products.  Promotional programs using coupons typically are designed to promote repeat purchases, consumer trials of products or brands, or both. Coupons are distributed primarily through advertisements in newspapers, newspaper supplements, freestanding inserts in newspapers, advertisements in magazines, direct mailings and inclusion on or in product packages.  Coupons typically provide that upon presentation to a retailer at the time of purchase of the product the consumer will receive a discount from the marked sales price of the product equal to the face amount of the coupon.  Coupons also provide that the manufacturer-issuer will pay retailers (i.e. supermarkets, grocery stores, discount stores, drug stores and other retail establishments) the face amount of the coupon plus a specified handling fee upon the presentation of the coupon to the manufacturer or its agent (Inmar).  The handling fee is designed to defray the costs

associated with handling coupons and it is customarily a standard amount per coupon regardless of the face value of the coupon or the identity of the manufacturer.  The prevailing per coupon handling fee is currently $.08.

1.    **EXHIBIT A.**  A coupon issued by a manufacturer will state a price that is to be discounted off a product that the manufacturer owns.  The coupon will state the following:

    A.    The coupon is the manufacturer's property.

    B.    The price to discount the product is named on the face of the coupon.

    C.    The coupon expiration date.

    D.    Name of the manufacturer and address appears on the face of the coupon indicating where to send the coupon for  redemption.

    E.    A cash value, usually 1/20 to 1/100 of a cent.  If you sent 20 coupons the manufacturer would have to pay sender $.01.

    F.    The manufacturer will pay face value of the coupon, plus a handling fee of $.08 per coupon to Plaintiffs as a redemption fee.

    G.    The face of the coupon states the rules of redemption by the manufacturer as well as State Laws and Federal Laws.

H.  Ninety-nine percent (99%) of the time the manufacturer
    will reimburse Plaintiffs for postage.

I.  The manufacturer has a contract with Inmar to receive
    the coupons that were issued to the public.  Inmar
    performs the service of marketing and paying the
    Plaintiffs.  All payments by Inmar follow the
    manufacturers' redemption policy.

## POINT II

### THIRD PARTY BENEFICIARY

Plaintiffs are a third party beneficiary in that the
contract between Inmar/CMS and the clients that Inmar/CMS
represent were written to benefit the Plaintiffs.  The clients
of Inmar/CMS entered into a contract with Inmar/CMS but only to
service a third party.  Therefore, the Third Party Beneficiaries
Act of 1999 is the only documented reason that Inmar/CMS
services are contracted by Inmar/CMS clients.  Also, they are
the named Defendants, other than P&G, and personally named
people in the Complaint.

## CONTRACTS

### Third Party Beneficiaries Act 1999

Many times the parties who execute a contract will not be the only persons who will have rights and/or duties under the contract.  These third parties fall into three categories: third party beneficiaries, delegates or assignees.

Definition of Plaintiffs rights for whom the contract is intended to benefit is referred to as an intended third party beneficiary.

Plaintiffs are an intended beneficiary if they have been vested by the relationship with Defendant manufactures and Inmar.  The Plaintiffs know and rely on the contract between Defendants manufacturer and Inmar.  The manufacturer and Inmar are contracting parties.

Plaintiffs are a creditor beneficiary and can sue the promisor for breach if the promisor does not perform under the contract between manufacturer and Inmar.  During Discovery Plaintiffs will require that Inmar produce true copies of the contracts between Inmar and each manufacturer.

Inmar and other Defendants cannot rescind or modify their contract without an intended beneficiary approval.

Plaintiffs are creditors of the manufacturer who the contract with Inmar was to extinguish or reduce a debt owed to

the Plaintiffs.    It is the manufacturers that paid the
Plaintiffs, therefore, that is direct contact to Plaintiffs.

Plaintiffs, in certain transactions, can be considered a
Donee Beneficiary in the relationship of third party to Inmar
and Defendants.

> Seaver v. Ramson.   224, NY 233, 120 NE 639 (1918).
>
> Sanders v. Vautier (1842).
>
> Evan Arthur Hook, et al., v. State of Arizona,
> Department of Corrections, No. 891-1552, 971 F. 2d
> 1012 (Sept. 1, 1992).

**A Third Party Beneficiary.**   The Plaintiffs have the right
to sue on a contract despite not having originally been an
active party in the contract between Manufacturer and Inmar.

Manufacturer issued a retail coupon to the public and
contracted with their agent Inmar/CMS, to perform a service to
redeem and pay for the coupon cost to Plaintiffs.    Plaintiffs
rights exist under Third Party Rights when:

A.    A valid contract exists between manufacturer and
      Inmar.

B.    Contracting parties intended to pay Plaintiffs
      expenses for coupon redemption.

C.    Plaintiffs are named or referred to in all contracts
      between parties, (Inmar/CMS and manufacturers).
      Plaintiffs received payment for coupon submission as a
      third party beneficiary.

D.  Plaintiffs received an enforceable third party
    contract by payments from manufacturers through Inmar
    to Plaintiffs.  Plaintiffs are an intended beneficiary.

## PARTIES

**1)**  At all relevant times hereto Plaintiff William C. Martucci
("WCM") was and is a resident of the State of New Jersey, with a
mailing address at 3 Dundar Road, Springfield, NJ  07081 and
Retailers Marketing Group, Inc. (RMG), a New Jersey Corporation.

**2)**  Upon information and belief and at all recent times hereto,
Procter & Gamble, Inc. maintains corporate offices at One
Procter & Gamble Plaza, Cincinnati, OH  45202.  A.G. Lafley,
maintain offices at Procter & Gamble, Inc. corporate
headquarters.  Kristy Herschberger and Ralph Maresco are
employed by P&G.

**3)**  Upon information and belief hereto, Inmar/CMS maintains
corporate offices at 635 Vine St., Winston-Salem, NC  27101.
David Mounts and Rich Schmidt maintain offices at Inmar, Inc.
corporate headquarters.  CMS (Carolina Marketing Service) is a

part of Inmar Inc. with an address of 635 Vine Street, North
Carolina 27106.

**4)** The following corporations are represented by Inmar/CMS.
Upon information and belief and at all recent times hereto these
corporations maintain corporate offices at: Nestle SC & USA,
800 Brand Ave., Glendale, CA 91203, S.C. Johnson & Son, Inc.,
1525 Howe St., Racine, WI 53403, Georgia Pacific Corp., 133
Peachtree St. NE, Atlanta, GA 30303, Abbott Labs, Inc., 100
Abbott Park Rd., Abbot Park, IL 60064, R.J. Reynolds Tobacco,
401 N. Main St, Winston-Salem, NC 27101, Bausch & Lomb, 400
Somerset Corp. Blvd., Bridgewater, NJ 08807, Philip Morris USA,
6601 Broad St., Richmond, VA 23230, Dole Packaged Foods, Co., PO
Box 5700, Thousand Oaks, CA 51031, Reckitt Benckiser, Morris
Corp. Center IV, 399 Interpace Pkwy., PO Box 225, Parsippany, NJ
07054, DPS Holding (Dr. Pepper), 5301 Legacy Dr., Plano, TX
75024, Pinnacle Foods Corp., 399 Jefferson Rd., Parsippany, NJ
07054, Pepsi-Cola North America, 1 Pepsi Way, Somers, NY 10589,
B & G Foods, Inc., 6 Gatehill Dr., Parsippany, NJ 07054,
Promotion In Motion, 25 Commerce Dr., PO Box 8, Allendale, NJ
07401, Carolina Marketing Services, ("CMS") 635 Vine St.,
Winston-Salem, NC 27101, American Snuff/R.J. Reynolds, 401 N.
Main St., Winston-Salem, NC 27101, United States Smokeless

Tobacco Co./Altria Corp., 6601 W. Broad St., Richmond, VA 23230,
Frito Lay, 7701 Legacy Dr., Plano TX 75024, Commonwealth –
Atadis, Inc., 5900 N. Andrews Ave., #1100, Fort Lauderdale, FL
33309, ITG Brands, 714 Green Valley Rd., Greensboro, NC 27408-
7018, American Lifeline, Inc., 138 First St., Baraboo, WI 53913,
Schwabe North American Co., 825 Challenger Dr., Green Bay,
Wisconsin 54311, Natures Bounty/Rexall Drug Inc., 110 Orville
Dr., Bohemia, NY 11716, Jose Almonte, 86-02 Northern Blvd.,
Jackson Heights, NY 11372, Supermarket Coupon Direct, 86-02
Northern Blvd., Jackson Heights, NY 11372, Wells Enterprises,
One Blue Bunny Dr., Le Mars, IA 51031  and other corporations to
be named at a later date.

[Intentionally Left Blank]

**MATERIAL FACTS**

**5)**   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 4 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**6)**   The coupon redemption business is a process by which manufacturer's issue vendor coupons, which have been redeemed by a retailer, then sent to a clearinghouse for reimbursement.

Briefly, clearinghouses scan and total the coupons so that retail stores may receive reimbursement checks from the issuing manufacturer of the coupons or their agents.

**7)**   Procter and Gamble, Inc. ("P&G") is a leading issuer of vendor coupons.  P&G receives vendor coupons from retailers and clearinghouses.  P&G issues payment for only P&G vendor coupons.

**8)**   Inmar/CMS is a redemption agent for various manufacturers' vendor coupons.  Inmar/CMS processes manufacturers' vendor coupons and pays retailers and coupon clearinghouses for their vendor coupon submissions.

**9)** The following manufacturers issue vendor coupons: Nestle SA & USA, Johnson & Son, Inc., Georgia Pacific, Abbott Labs Inc., R.J. Reynolds Tobacco, Merck Consumer Care, Bausch & Lomb, Philip Morris USA, Dole Packaged Foods, Co., Reckitt Benckiser, DPS Holding (Dr. Pepper), Pinnacle Foods Corp., Pepsi-Cola Corp., B & G Foods, Inc., Promotion in Motion, Carolina Marketing Services, American Snuff/R.J. Reynolds, United States Smokeless Tobacco Co./Altria Corp., Frito Lay, Commonwealth-Atadis, Inc., ITG Brands, American Lifeline, Inc., Schwabe North American Co., Natures Bounty/Rexall Drug Inc., and Wells Enterprises.

The above listed manufacturers are represented by Inmar/CMS and are under contract to Inmar/CMS to perform coupon processing services on their behalf.

**10)** Inmar/CMS performs processing services in the field of vendor coupon representation issues payments to retailers and clearinghouses, and is a fully approved and authorized clearinghouse for vendors' coupons by all manufacturers listed in this Complaint, other than P&G.

**11)** Inmar/CMS controls approximately sixty-five percent (65%) of the total vendor coupon redemptions, reclusive of P&G coupons and NCH. This may be a violation of the Sherman Antitrust Act, the Federal Trade Commission, Clayton Act 15 U.S.C. § 26 and other violations as stated in this complaint.

**12)** P&G issued approval to Plaintiffs to be a fully approved clearinghouse for vendor coupon redemption. This has been in effect for nearly forty (40) years. During this time there has never been any infraction of contract by Plaintiffs.

**13)** Inmar/CMS issued approval to Plaintiffs to be a fully approved clearinghouse for vendor coupon redemption. This has been in effect for nearly forty (40) years. During this time there has never been any infraction of contract by the Plaintiffs.

## COUNT ONE

### BREACH OF CONTRACT

**14)** Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 13 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**15)** **EXHIBIT B.** Procter & Gamble, Inc. signed a contract with Plaintiffs to act as a fully approved clearinghouse for the redemption of vendor coupons. The contract was called "Coupon Clearing House Authorization", and was signed by P&G on November 15, 2010. This contract was not honored by P&G, and as a result Plaintiffs lost ninety percent (90%) of its coupon business which has caused great financial hardship to Plaintiffs. A true copy of a valid contract is shown in Exhibit B. Defendant P&G failed to perform its obligations under this valid contract. The relationship between Plaintiffs and P&G has been in existence for almost 40 years.

**16)** **EXHIBIT C.** Inmar, Inc. and CMS signed a contract with Plaintiffs to act as a fully approved clearinghouse for the redemption of vendor coupons. The contract was called "Coupon

Clearing House Agreement", and was signed by Inmar/CMS.  This
contract was not honored by Inmar/CMS, and as a result
plaintiffs lost ninety percent (90%) of coupon business,
reclusive of P&G, which has caused great financial hardship to
Plaintiffs.  A true copy of a valid contract is shown in Exhibit
C.  Defendant Inmar failed to perform its obligations under this
valid contract.  The relationship between Plaintiffs and
Inmar/CMS has been in existence for almost 40 years.

**17) EXHIBIT D.**  Plaintiffs have a valid contract for coupon
redemption with R.J. Reynolds and Nestle SA & USA.  The
contracts were not honored by R.J. Reynolds and Nestle SA & USA.

**18) Wherefore,** Plaintiffs demand judgment against Defendants Procter
& Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and
all other manufacturers named in this complaint for compensatory
damages, punitive damages, future damages, incidental damages (costs)
and such other relief as the Court may deem just, proper and
equitable.

## COUNT TWO

### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALINGS

**19)** Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 18 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**20)** Breach of the Implied Covenant of Good Faith and Fair Dealings are implicit in all contracts as entered into with P&G and Plaintiffs, Inmar/CMS and Plaintiffs, and R.J. Reynolds, Nestles USA and Plaintiffs.

**21) Wherefore,** Plaintiffs demand judgment against Defendants Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and all other manufacturers named in this complaint for compensatory damages, punitive damages, future damages, incidental damages (costs) and such other relief as the Court may deem just, proper and equitable.

## COUNT THREE

### CONVERSION

**22)** Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 21 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**23)** Upon information and belief the Defendants P&G and Inmar/CMS are wrongfully and illegally exercising dominion and control over funds rightfully belonging to the plaintiffs and retailers that are represented by Plaintiffs - which actions constitute an illegal tortuous conversion of funds.

**24)** Defendants P&G and Inmar/CMS cloistered a conversation by not allowing Plaintiffs to prove by documentation Plaintiffs position as an authorized clearinghouse.

**25)** Defendants P&G and Inmar/CMS actions were performed on or about August of 2014 to present with a malicious objective intended to cause injury to the Plaintiffs. The Plaintiffs continue to suffer a financial hardship and mental anguish.

**26)** **Wherefore,** Plaintiffs demand judgment against Defendants Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and all other manufacturers named in this complaint for compensatory damages, punitive damages, future damages, incidental damages (costs) and such other relief as the Court may deem just, proper and equitable.

## COUNT FOUR

### NEGLIGENT MISREPRESENTATION

**27)** Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 26 Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**28)** Upon information and belief P&G and Inmar/CMS violated *"Uberrimae Fidel"* that states one must act in utmost good faith and requires making known all material facts influencing the contract. The Defendants P&G and Inmar/CMS did not maintain a fiduciary relationship with Plaintiffs. All parties must have equal knowledge of a matter in conflict. If P&G and Inmar/CMS did not disclose to Plaintiffs any and all matters in conflict, then P&G and Inmar/CMS did not act for, or give advice for, the benefit of Plaintiffs within the scope of their relationship. The contractual relationship between P&G, Inmar, CMS and the

Plaintiffs supports that there was a fiduciary relationship, as
stated in the Sherman Act.

Krakowski v. Eurolynx Properties, Ltd. (1955).

Lockhart v. Osman, (1982) UR57.

With v. O'Flanagan, (1936) CH575

**29)** **Wherefore,** Plaintiffs demand judgment against Defendants Procter
& Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and
all other manufacturers named in this complaint for compensatory
damages, punitive damages, future damages, incidental damages (costs)
and such other relief as the Court may deem just, proper and
equitable.

### COUNT FIVE

#### CONSPIRACY

**30)** Plaintiffs repeat and reallege the allegations set forth in
paragraphs 1 through 29 of Plaintiffs Second Amended Verified
Complaint as set forth at length herein.

**31)** Upon information and belief Defendant Procter & Gamble
violated the Security and Exchange Commission Act of 1934.  It
is their fiduciary duty to be transparent to their shareholders.

Plaintiffs allege that P&G has never issued an 8K or any other notice to shareholders relating to this matter.

**32)** Upon information and belief Procter and Gamble conspired with Inmar/CMS to void all coupon contracts with Plaintiffs. This was evidenced by both companies voiding their contracts with Plaintiffs within approximately 24 hours of each other in the latter part of 2014. Plaintiffs allege that communication, phone calls and e-mails, were exchanged between P&G and Inmar in this conspiracy. This is clear violation of the Sherman Act as well as other federal violations. Upon and during discovery P&G and Inmar must produce all e-mails, phone records, recording of phone calls written communications and any other evidence documenting their relationship to Plaintiffs. Plaintiffs will rely on the depositions of Ms. Jackson from Inmar, and Ms. Herschberger and Mr. Ralph Maresco from P&G. Plaintiffs will take depositions of other Inmar and P&G supervisors.

**33)** Upon information and belief Inmar/CMS did not notify the manufacturers they represent of their intention to void any and all contracts that pertain to Plaintiffs on or about September 2014.

Allied Equipment Corp. v. Litton Saudi Arabialto.
Supra. 7  Cal. 4th AT510-11.

Massey v. Armco Steel Co.   652 S.W. 2d 933934 (Tex 1983).

Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.
435 W.W. 2d 854,858 (Tex. 1969).
Diaz-Bisio v. Municipal of San Juan.   2009 U.S. Dist. Lexis
100841, (D.P.R. Oct. 28, 2009).

Criminal Law Act 1977.

42 U.S. Code § 1985 (3).

18 U.S.C. §§ 1961-1968 (RICO).

**34)**   Defendants P&G and Inmar/CMS conspired to set a
reimbursement minimum for coupon shipping costs that is
reimbursed to retailers and clearinghouses.  The shipping cost
reimbursement rate used by Defendants P&G and Inmar/CMS are
approximately five dollars ($5.00) per thousand coupons.  The
fee is being used instead of the traditional minimum postal
shipping charge.  Plaintiffs state that P&G and Inmar/CMS have
conspired to set the maximum rate they will reimburse for coupon
shipments.  This is a clear violation of the Sherman Antitrust
Act.  Plaintiffs claim for relief is brought under the Clayton
Act 15 U.S.C. § 26 for actions in violation of the Sherman Act
15 U.S.C. § 1 Sec.1.

**35)**  Plaintiffs allege that P&G and Inmar/CMS agreed to set as a
maximum rate a fee of $5.00 fee per 1,000 coupons that are paid
as postage and shipping fees to reimburse retailers and
clearinghouses.  Postage and shipping are an added expense to
retailers and clearinghouses.  Five dollars per 1,000 coupons is
insufficient to cover these costs.  Clearly a violation of the
Sherman Antitrust Act 15 U.S.C. Rules 1-7.

Upon information and belief Plaintiffs allege that
Inmar/CMS instructed their clients to set the maximum rate they
will reimburse for shipping and postage at $5.00 per 1,000
coupons.  This too is in violation of Sherman Antitrust Act 15
U.S.C. Rules 1-7.

A.    Upon information and belief Plaintiffs allege that
      Inmar/CMS was acting alone or in concert with
      manufacturers to set a $5.00 per 1,000 coupons fee for
      shipping and postage.

B.    Under the circumstances it is apparent that Inmar/CMS,
      while ostensibly only an agent for redemption of
      coupons for manufacturers, is in fact a messenger
      facilitating exchange of information and direction
      resulting in fixing and stabilizing the amount

> manufacturers pay for reimbursing shipping and postage
> charges.  This conduct is concerted price fixing by
> competitors.
>
> Violation of the Sherman Act 15 U.S.C. Rule 1.

**36)**  Inmar/CMS controls over 65% of all coupon redemption in the
United States.  This does not include P&G coupons.  This is a
violation of the anti-competition Section of the Federal Trade
Commission Act (FTCACT) as stated in Section 5 of the FTCACT and
is condemned by the Antitrust Laws.

**37)**  Upon information and belief Defendant Inmar deceptively
created a reputation that their services are far superior to
their competitors.  Plaintiffs allege that due to false
advertising and misleading marketing practices they have
increased their sales and their predominate share of the coupon
market.

Hertz Furniture Sys. LC v. Virco MFS Corp. No.2:13-CV-09474
(C.D. Cal. Complaint filed Dec. 26, 2013).

**38)**  Plaintiffs allege that Inmar corporate officers, in
conjunction with P&G corporate officers, on or about August 2014

to present, conspired to cancel Plaintiffs authorization as a coupon clearinghouse.  Therefore, fraud and negligence are demonstrated and is a violation of a provision in the New Jersey Consumer Fraud Act.  Inmar/CMS did not demonstrate they had approval from the manufacturers that they represented to cancel Plaintiffs contract.  This practice constitutes negligent misrepresentation and a breach of express and implied warranty.

> Klacko, et al. v. Diamond Foods, Inc. No.9:14-DV-80605
> (S.D. Fla. complaint filed on Jan. 3, 2014).

**39) Wherefore,** Plaintiffs demand judgment against Defendants Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and all other manufacturers named in this complaint for compensatory damages, punitive damages, future damages, incidental damages (costs) and such other relief as the Court may deem just, proper and equitable.

## COUNT SIX

### FRAUD

**40)** Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 39 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**41)** Upon information and belief P&G and Inmar/CMS violated the Sherman Antitrust Act 15 U.S.C. A § 1 ET Seq. from August 2014 to present. (To be evidenced through Deposition and Discovery.)

**42)** Upon information and belief P&G and Inmar/CMS caused restraints of trade by cancelling in harmony all Plaintiffs coupon trade. It was their intent to eliminate competition, therefore prohibiting a free flow of trade enterprise.

**43)** Carolina Marketing Services ("CMS") is part of Inmar, Inc. CMS represents retailers and manufacturers in coupon redemption. Upon the cancellation of Plaintiffs coupon contract CMS/Inmar has entered into a contract to pay former retail stores coupon submissions that Plaintiffs serviced. Ninety percent (90%) of Plaintiffs business was taken over by Inmar/CMS after P&G, Inmar and CMS voided Plaintiffs contracts. This constitutes fraud.

**44)** Upon information and belief Defendants P&G and Inmar/CMS are monopolizing coupon trade by controlling about 93% of coupon redemption. A violation of Sec. 2 of the Sherman Antitrust Act.

**45)** Upon information and belief P&G and Inmar/CMS have a
relationship of doing coupon business and are joined together
with other types of coupon marketing businesses. This is a
clear violation of the Sherman Antitrust Act, and is illegal
under this Act.

> United States v. Arnold, Schwinn & Co. 388 U.S. 365
> (1962). U.S. Code § 15 Chapter I.

**46)** During phone calls between P&G and Plaintiffs, P&G insisted
that there was no contract with Plaintiffs. Plaintiffs
explained there was a signed contract between P&G and
Plaintiffs. Fraud was committed by P&G and Inmar from about
April 2014 to preset. Phone calls between P&G and Plaintiffs
and phone calls between Inmar and Plaintiffs will be produced
through Discovery. P&G is in Cincinnati, Ohio and Inmar is in
Winston-Salem, North Carolina.

**47) Wherefore,** Plaintiffs demand judgment against Defendants Procter
& Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and
all other manufacturers named in this complaint for compensatory
damages, punitive damages, future damages, incidental damages (costs)
and such other relief as the Court may deem just, proper and
equitable.

## COUNT SEVEN

### RESTRAINT OF TRADE

**48)**  Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 47 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**49)**  On August 20, 2014, Kristy Herschberger and Ralph Maresco, both employees of P&G, telephoned the Plaintiffs and stated the Plaintiffs could no longer do business with P&G.  Herschberger and Maresco also stated P&G did not have to honor any contracts between P&G and the Plaintiffs.  Plaintiffs asked why P&G would not honor their contractual obligation.  Mr. Maresco's answer was: "I can do whatever I want and I choose not to honor your vendor coupon submissions".  Since the foregoing conversation on August 20, 2014, P&G has been in violation of their contract with the Plaintiffs.  According to the contract retailer coupons submitted for payment to P&G by the Plaintiffs were to be paid directly to the Plaintiffs.  As of this date P&G has not paid the retailers or Plaintiffs.  As a result, unpaid retailers are dunning the Plaintiffs and are threatening lawsuits against Plaintiffs.

Kristy Herschberger and Ralph Maresco also stated the Plaintiffs coupon submission was too high as compared to the

coupon volume of years 2011 and 2013. Plaintiffs explained that approximately 3,000 advertising brochures had been mailed to retail outlets in order to increase business, as is normal to increase business.

**EXHIBIT E.** All advertising brochures, plus retailers' verification that the retailers were in good standing, as required by the P&G contract, were documented. All documentation was forwarded to P&G on a few occasions during the period of October 2013 through April in 2015.

**50)** On August 20, 2014 approximately 24 hours after P&G informed Plaintiffs that the contract was cancelled, Inmar/CMS informed Plaintiffs that they would no longer accept coupons from Plaintiffs and Inmar/CMS cancelled Plaintiffs contract on or about September 2014. Inmar would not give any reason for their actions of cancelling Plaintiffs coupon redemption contract.

**51)** Upon information and belief P&G and Inmar/CMS conspired against Plaintiffs through e-mails and phone conversations. This is a clear violation of the Sherman Antitrust Act and the

Criminal Law Act of 1977.  Documentation to be produced upon
Discovery and Depositions.

**52)**  On August 20, 2014, Ralph Maresco the Associate Director of
Retail Marketing Services at P&G, and Kristy Herschberger of P&G
conference phoned Plaintiffs concerning Plaintiffs increase in
vendor coupon dollar amount.  At this time Maresco notified
Plaintiffs that because of Plaintiffs increase in vendor coupon
volume submitted to P&G, P&G would no longer honor Plaintiffs
vendor coupons for redemption.  Maresco notified Plaintiffs not
to send any more coupons to P&G.  Plaintiffs explained about an
advertising program Plaintiffs conducted mailing 3,000
advertising mailers to retailers - of which Plaintiffs secured
approximately 150 new retailers - therefore increasing
Plaintiffs vendor coupon value.  Plaintiffs asked Maresco to
weigh the facts, and were told by Maresco "I can do whatever I
want and I choose not to honor your vendor coupon submissions".
Plaintiffs stated that this was not a just reply.  Maresco's
response was "I can do and say whatever I want".

**53)** Plaintiffs sent Sharon Stone, Vice President of P&G, via certified mail, all documentation showing the advertising mailer that Plaintiffs mailed to retailers. Plaintiffs also sent copies of retailer service documents from all new retailers signed by Plaintiffs and the retailers as required by the P&G coupon contract.

**54)** As of this date P&G has not paid Plaintiffs for open invoices embodied by vendor submissions, nor has P&G paid the Plaintiffs or retailers for coupons submitted to P&G for payment that the Plaintiffs represent.

**55)** Plaintiffs allege Inmar/CMS employed numerous anti-competitive business practices to freeze Plaintiffs out of business and maintained a *de facto* monopoly on the coupon industry. Inmar/CMS has utilized unscrupulous strategies to prevent Plaintiffs from earning a gainful living in the coupon industry. The coupon business is and has been Plaintiffs only source of income.

**56)**  Plaintiffs allege Inmar/CMS and P&G have had legal

complaints lodged against them in their marketing and coupon

units.  These complaints have included violating the Sherman Act

and the Clayton Act with their unfair competition and tortuous

interference with the issuing of contracts.

**57)**  Plaintiffs do not have to allege that competitors Inmar/CMS

and P&G communicated directly with one another to void

Plaintiffs coupon clearing authorizations.

    Interstate Circuit v. United States.

**58)**  Defendants P&G and Inmar/CMS violated 15 U.S.C. § 1 in

their conduct pertaining to Plaintiffs in an unreasonable

restraint of trade in the free market of coupon redemption.

    United States v. Socony-Vacuumoile Co.
    310 U.S. 150, 221, S.Ct. 811, 84X (1940).

**59)**  Defendants P&G and Inmar/CMS violated 15 U.S.C. §

28.  Plaintiffs seek relief against loss and damage by P&G and

Inmar/CMS for violation of the Antitrust Laws.

    Cargill, Inc. v. Monfort.  479 U.S. 104, 113, 107,
    S. Ct. 484, 93LEDZd4276 (1986).

**60) EXHIBIT F.** Upon information and belief Plaintiffs allege

that Inmar has violated the Sherman Antitrust Act by purchasing

Hopster, Inc.,

http://www.prweb.com/releases/2014/11/prweb12294695.htm

Millennium Process Coupon, Inc.

http://www.blg.com/en/media/dealsandsuits 479

and other related companies in the coupon industry. Inmar also

joined Savings.com in a strategic relationship.

http://www.valpak.com/media/press-releases/2015/savings-inmar-
announce-strategic-partnership.jsp

**61) Wherefore,** Plaintiffs demand judgment against Defendants

Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles

USA and all other manufacturers named in this complaint for

compensatory damages, punitive damages, future damages, incidental

damages (costs) and such other relief as the Court may deem just,

proper and equitable.

## COUNT EIGHT

### OPEN INVOICES

**62)** Plaintiffs repeat and reallege the allegations set forth in

paragraphs 1 through 61 of Plaintiffs Second Amended Verified

Complaint as set forth at length herein.

**63)  EXHIBIT G.**   The following Defendants owe Plaintiffs for unpaid invoices:  P&G, Inmar/CMS, R.J. Reynolds, Abbott Labs, Inc., B & G Foods, Inc., Bausch & Lomb, Dole Packaged Foods Co., DPS Holding (Dr. Pepper), Georgia Pacific Corp., Merck Consumer Care, Pepsi-Cola North America, Philip Morris USA, Pinnacle Foods Corp., Promotion In Motion, Reckitt Benckiser, SC Johnson & Son, Inc. and Nestles USA.

**64) Wherefore,** Plaintiffs demand judgment against Defendants Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and all other manufacturers named in this complaint for compensatory damages, punitive damages, future damages, incidental damages (costs) and such other relief as the Court may deem just, proper and equitable.

### COUNT 9

### SHERMAN ANTITRUST ACT

**65)**   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 64 of Plaintiffs Second Amended Verified Complaint as set forth at length herein.

**66)** Plaintiffs are a coupon processor in the retail coupon industry and are retained by retailers to sort, count and submit coupons to issuing manufacturers, or their agents, for redemption. Plaintiffs advance payment to retailers for the value of the expected coupon redemption. This makes the Plaintiffs a clearinghouse in a funded transaction.

**67)** Plaintiffs submit the coupons directly to the issuing manufacturer or their agent. Coupons submitted to a manufacturers' agent who then redeems the coupons on behalf of the manufacturer. Approximately 93% of the redemption agent market is controlled by two companies - Inmar, Inc. and Carolina Marketing Services (Inmar/CMS). Inmar/CMS are the servicing agent for manufacturers who are named defendants in this complaint. P&G is not included in this 93%.

**68)** Manufacturers that issue coupons place a handling fee of $.08 on every coupon as payment for the retailer to redeem each coupon. The $.08 fee has been in existence for approximately 20 years. Plaintiffs inquired of P&G and Inmar/CMS when and if the $.08 handling fee would be increased. P&G replied that they

would not increase the fee.  Inmar replied that they would not increase the fee based on P&G not increasing their handling fee.

**69)**  Plaintiffs allege that P&G is the control company that sets the industry standards in accord with the two manufacturer agents that control 93% of the remaining industry.  Collusion and control of the industry between P&G and Inmar/CMS is a violation of the Sherman Antitrust Act 15 U.S.C. Rules 1-7.  Plaintiffs allege P&G and Imar/CMS engage in price fixing the fee of $.08 per coupon.  History proves this.  When P&G raised their coupon fee to $.08(the better part of 20 years ago) all the manufacturers that issue coupons did the same.  At the same time, to the best of Plaintiffs knowledge, Inmar/CMS instructed their clients to follow suite in raising the handling fee.

**70)**  Plaintiffs allege that P&G, Inmar/CMS and Inmar clients under contract to Inmar acted in concert to not increase the $.08 handling fee as directed by Inmar/CMS.  This is a conspiracy in restraint of commerce among several states.  This is declared to be illegal as per the Sherman Antitrust Act.

**71)** Plaintiffs allege that P&G and Inmar/CMS acted in concert to further their unlawful price fixing in violation of the Clayton Antitrust Act 15 U.S.C. Rules 12-27.

**72) Wherefore,** Plaintiffs demand judgment against Defendants Procter & Gamble, Inc., Inmar, Inc., CMS, R.J. Reynolds, Nestles USA and all other manufacturers named in this complaint for compensatory damages, punitive damages, future damages, incidental damages (costs) and such other relief as the Court may deem just, proper and equitable.

[Intentionally Left Blank]

## PRELIMINARY STATEMENT

Plaintiffs William C. Martucci and Retailers Marketing Group, Inc. ("Plaintiffs") submit this memorandum of law in opposition to the Motion by the Defendants to dismiss Plaintiff's complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), Fed R. Civ. P. 12(b)(1). Stripped of its rhetoric, the Motion premises dismissal by the Defendants is on two simple grounds: (1) That Plaintiff's failed to adequately plead the elements of a Complaint, rendering each and every one of Plaintiff's claims legally deficient, and (2) that the provisions of the New Jersey Statute of Frauds as of when the Third Party Beneficiary, (Third Party Beneficiary Act of 1999, formed on or about 1975), bars Plaintiff from relief for lack of a writing signed by the party to be bound.

As shown below, however, Defendants' motion does not meet the standards set by Fed. Rule 12(b)(6) and Fed. Rule 12(b)(1) for a dismissal for failure to state a claim. By and large, Defendants strategy in this motion is to point to the allegations by Plaintiffs describing Defendants' breaches of the contract/Third Party Beneficiary between Defendants and Plaintiffs as proof that Plaintiffs did not really have a contract and Third Party Beneficiary status and is not entitled to relief - for if Plaintiffs really were a contract/Third Party

Beneficiary, it would never have let these things happen! Defendants pretend, in other words, not to know that this lawsuit is, in fact, Plaintiff's last resort - after being deceived and bullied into the loss of the Plaintiffs Coupon Processing Contract with the named Defendants.

Plaintiffs believe that their long term Contract - for asserting its rights and recovering the losses incurred as a result of Defendant's faithlessness. Defendants assert confidently that they "can prove that Plaintiffs story is an entire fabrication". This Court, it is submitted, should take them up on their offer, because Defendants' facile legal arguments are simply insufficient grounds for dismissal under Fed. Rule 12(b)(6) and Fed. Rule 12(b)(1).

[Intentionally Left Blank]

**LEGAL ARGUMENTS**

## I.   PLAINTIFFS HAVE ADEQUATELY PLED THE EXISTENCE OF AN ENFORCEABLE CONTRACT/THIRD PARTY BENEFICIARY.

Under Fed. R. Civ. P. 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b )(6) or Fed. R. Civ. 12(b)(1), a court merely seeks a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a), Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., Civ. No. 08-4764 (NLH), 2009 WL 1085737 at *2 (D.N.J. Apr. 20, 2009). A complaint needs only contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In determining the sufficiency of a complaint the Court must accept as true all of a plaintiff's well-pled factual allegations and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Finally, the Court must limit its consideration of the factual sufficiency of the pleadings to the pleadings themselves and any documents specifically referred to therein. Gonzalez v. King Soopers/Kroger Inc. #76, No. 14-CV-00773-KMT, 2014 WL

2862262 (D. Colo. June 24,  2014) ("In considering a motion to dismiss pursuant to Fed. Rule 12(b)(6) or Fed. Rule 12 (b)(1)or Fed. Rule Civ. 8(a),  it is improper for the court to consider materials from outside of the pleadings"), see also In re Total Containment, Inc., 335 B.R. 589,  607 (Bankr. E.D. Pa. 2005) (refusing to consider any added information in support of Fed. Rules 12(b)(6) and 12(b)(1) motion where the complaint "makes no reference to added information and is not "central" to its claims).  "The Court may simply deny a Rule 12(b)(6)or 12(b)(1) motion to dismiss which relies on facts asserted outside the pleadings." Hilton Hotels Corp. Texas Occupational Injury Ben. Plan v. Jurss, CIV.A. H-07-3104,  2007 WL 2987977 (S.D. Tex. Oct. 10, 2007).  On this basis the Court should consider dismissing Defendants' motion due to fact their brief asserting facts not alleged or referred to in the pleading, not authenticated and not made available to Plaintiff.

> **A.   The Complaint alleges sufficient mutuality of Plaintiffs and Defendants in the Contract/Three Party Beneficiary.**

Defendants' first proffered ground for dismissal is that the Complaint fails to adequately plead the existence of a Contract/Third Party Beneficiary, partially on the grounds that Plaintiffs were not, per the allegations, a truly Third Party Beneficiary of the Contract.  Defendants are mistaken,  however,

both because the law is highly flexible regarding this aspect of Contract/Third Party Beneficiary's and because the allegations do in fact demonstrate mutuality of responsibilities despite the division of participation that was the logical premise of the contract.

Under New Jersey Law a Contract/Third Party Beneficiary is a "special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962). This formulation is critical to this litigation because among Plaintiff's claims is that, despite the existence of such an agreement, Defendants breached its terms by their refusal to honor Contracted/Third Party Beneficiary with Plaintiffs.

These factual allegations, eminently plausible, must be treated by the Court as true. As pled, therefore, Defendants may be liable as under the "mere continuation" exception to successor non-liability under New Jersey law. See, e.g., Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 766 (D.N.J. 2013).

While a Third Party Beneficiary is like any business combination in that its terms are predicated on an agreement between the parties, Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J. Super. 282, 289 (App. Div. 1979), the Third Party

Beneficiary relationship may be less formal Hellenic Lines,
Ltd. v. Commodities Bagging & Shipping,  Process Supply Co.,
611 F. Supp. 665,  679 (D.N.J. 1985).  A Third Party Beneficiary
may be implied wholly or in part from the acts and conduct of
the parties. Id.  Even where there is an explicit agreement it
"need contain no particular form of expression,  nor is
formality of execution necessary" to its terms to be
enforceable.  Wittner,  72 N.J. Super. at 444.  A Contract/Third
Party Beneficiary enterprise will contain some or all of the
following elements:

    A.    A contribution by the parties of money,  property,
        effort,  knowledge,  skill or other assets to a common
        undertaking between Plaintiffs and Defendants,

    B.    A joint coupon interest in the subject matter of the
        contract,

    C.    A right of mutual control or management of the
        coupon issuance and redemption,

    D.    Expectation of profit from contracts,

    E.    A right to participate in the profits, (handling fees)

    F.    Most usually,  limitation of the objective to
        multiple undertakings or ad hoc enterprise.

Id.,  quoting 4 Samuel Williston,  Williston on contracts,  §
318A,  at pp. 563-65 (4th ed. 1990).  "Between the parties to a
Third Party Beneficiary,  a common element is a fiduciary
relationship." Id.

Seizing on this enumeration of features typically found in

a Third Party Beneficiary Defendants assert that the Complaint

fails because it does not allege that Plaintiffs retained a

sufficient share of control over the contracted accounts

serviced by Plaintiffs so as to constitute "mutual control or

management of the enterprise." Defendants, however, are

mistaken regarding the legal standard for pleading a Third Party

Beneficiary. As the language of Wittner makes clear, a court

examining a complaint to determine if a Third Party Beneficiary

has been adequately pled does not strictly test for the presence

of each "element" where a Third Party Beneficiary is alleged.

Repeating the words of the Appellate Division in Wittner,

"There is substantial agreement that some or all of the

following elements ... must be present." 72 N.J. Super. at 444,

see also Rainbow Apparel, Inc. v. KCC Trading, Inc., Case No.

9-CV-05319 (DMC-MF), 2010 WL 2179146 at *11 (D.N.J. May

26,2010) (recognizing oral Third Party Beneficiary/Contract

based upon "some or all" of the listed elements).

Thus it is not enough merely for a defendant to assert that

absent one specific component of the Third Party Beneficiary

"concept," a pleading cannot be said to have made out a claim

premised on the existence of a Third Party Beneficiary. Rather,

the Court must consider the facts alleged and determine whether

a Third Party Beneficiary was formed being guided, as its

primary consideration, by the intention of the parties.

Weichert Co. Realtors v. Ryan, 128 N.J. 427,435 (1992). Looked at differently, the leading cases are clear that the "element" of mutual control, even if viewed as a but-for component for finding a Third Party Beneficiary, is itself defined broadly and pragmatically. As this Court explained in Hellenic Lines supra:

> Although a joint venture is not present absent a right of mutual control, mutual control over every aspect of the venture need not be actual. "A joint adventurer may entrust actual control of the operation to his co-adventurer and it still remains a joint venture." Wittner, 178 A.2d at 676. Similarly, joint venturers may agree that responsibility for particular tasks shall reside with less than all the venturers.

611 F. Supp. at 679. Unsurprisingly, Defendants' brief ignores the Hellenic Lines decision, presumably because the quoted language is favorable to plaintiff. Indeed, consonant with the formula of divided responsibilities described in Hellenic Lines and Wittner, Defendant had longstanding relationships with coupon customers in the United States market. Plaintiffs did "place" the servicing of these accounts "in Defendant's hands" pursuant to the Third Party Beneficiary that was the point of the contract or, more accurately, that was half the point. But the Complaint cannot be construed, as Defendants suggest, as alleging something as illogical as a relationship where Plaintiffs ceased to do anything to contribute to the Third

Party Beneficiary other than collect commissions. Defendants' argument is that according to the Complaint, Plaintiffs simply ceased to be involved in the processing and redemption of vendor coupons. This is not true as Independent Manufacturers were cognizant of revenues arising from Plaintiffs coupon submission to Independent Manufacturers on a regular basis.

Plaintiffs for this reason allege a breach of a Three Party Beneficiary/Contract as the reason for this lawsuit. Independent Defendants are not entitled to dismissal of the Amended Complaint on the grounds that it fails to state a claim. Fed. Rule Civ. P 12(b)(6).

## II. PLAINTIFFS CLAIM FOR ESTOPPEL IS ADEQUATELY PLED AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM.

There are two types of estoppel: "promissory" and "equitable." Promissory estoppel consists of (1) a clear and definite promise, (2) made with the expectation that the promisee will rely thereon, (3) and on which the promisee reasonably does, (4) resulting in a definite and substantial detriment incurred in that reliance. Equitable estoppel is essentially the same but also requires a detrimental change in position based on reasonable reliance, concomitantly, the Third Party Beneficiary asserting equitable estoppel need not prove a promise, but may base its claim on conduct, inaction, or representation by the plaintiff that was intentional or which,

under the circumstances, should have been expected to induce
action. *See* Miller v. Miller*, 97* N.J. 154 (1984), Carlsen v.
Masters, Mates etc.*,* 80 N.J. 334,339-42 (1979).

In their argument seeking dismissal of Plaintiffs estoppel
claim, defendants do everything but acknowledge the
straightforward allegations in the Complaint on which Plaintiffs
equitable estoppel claim is based. Those allegations are that
Defendants representations and behavior led Plaintiffs
reasonably to believe that Defendants were entering into a
contract/Third Party Beneficiary with it and would share part of
the coupon profits from the U.S. coupon market with Plaintiffs
in exchange for access to Plaintiffs most valuable coupon
accounts - and that, in reliance on Defendants words and
actions, Plaintiffs did as Defendants hoped it would, turning
its valuable coupon accounts over and share with Defendants as
part of the contract/Third Party Beneficiary continuing to bring
new accounts to the contract and eventually losing control over
those customers with inadequate, and eventually no,
compensation to show for it.

Contrary to defendants' argument, Plaintiffs have, as
demonstrated above, made out a *prima facie* cause of action for
equitable estoppel, and defendants' motion to dismiss this
claim should be denied.

**III. PLAINTIFFS CLAIM FOR THIRD PARTY BENEFICIARY IS ADEQUATELY PLED AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

### Third Party Beneficiary Act of 1999

Plaintiffs are a Third Party Beneficiary in that the contract between Inmar/CMS and the clients that Inmar/CMS represents was written to benefit the Plaintiffs. The clients of Inmar/CMS entered into a contract with Inmar/CMS but only to service a third party. Therefore, the Third Party Beneficiaries Act of 1999 is the only documented reason that Inmar/CMS services are contracted by Inmar/CMS clients. Also, they are the named Defendants, other than P&G and personally named people, in the Complaint.

Many times the parties who execute a contract will not be the only persons who will have rights and/or duties under the contract. These third parties fall into three categories: third party beneficiaries, delegates or assignees.

Definition of Plaintiffs rights for whom the contract is intended to benefit is referred to as an intended Third Party Beneficiary.

Plaintiffs are an intended beneficiary if they have been vested by the relationship with Defendant manufactures and Inmar/CMS. The Plaintiffs know and rely on the contract between

Defendants manufacturer and Inmar/CMS. The manufacturer and Inmar/CMS are contracting parties.

Plaintiffs are a creditor beneficiary and can sue the promisor for breach if the promisor does not perform under the contract between manufacturer and Inmar/CMS. During Discovery Plaintiffs will require that Inmar/CMS produce true copies of the contracts between Inmar/CMS and each manufacturer represented by Inmar/CMS.

Inmar/CMS and other Defendants cannot rescind or modify their contract without an intended beneficiary approval.

Plaintiffs are creditors of the manufacturer who the contract with Inmar/CMS was to extinguish or reduce a debt owed to the Plaintiffs. It is the manufacturers that paid the Plaintiffs, therefore, that is direct contact to Plaintiffs.

Plaintiffs, in certain transactions, can be considered a Donee Beneficiary in the relationship of third party to Inmar/CMS and Defendants.

> Seaver v. Ramson. 224, NY 233, 120 NE 639 (1918).
>
> Sanders v. Vautier (1842).
>
> Evan Arthur Hook, et al., v. State of Arizona, Department of Corrections, No. 891-1552, 971 F. 2d 1012 (Sept. 1, 1992).

**A Third Party Beneficiary**. The Plaintiffs have the right to sue on a contract despite not having originally been an active party in the contract between Manufacturer and Inmar/CMS.

Manufacturer issued a retail coupon to the public and contracted with their agent, Inmar/CMS, to perform a service to redeem and pay for the coupon cost to Plaintiffs.  Plaintiffs rights exist under Third Party Rights when:

A.  A valid contract exists between manufacturer and Inmar/CMS.

B.  Contracting parties intended to pay Plaintiffs expenses for coupon redemption.

C.  Plaintiffs are named or referred to in all contracts between parties,  (Inmar/CMS and manufacturers). Plaintiffs received payment for coupon submission as a Third Party Beneficiary.

D.  Plaintiffs received an enforceable third party contract by payments from manufacturers through Inmar/CMS to Plaintiffs.  Plaintiffs are an intended beneficiary.

## IV.  THE STATUTE OF FRAUDS DOES NOT BAR PLAINTIFFS AMENDED COMPLAINT.

The Third Circuit has cautioned against too readily granting a motion to dismiss under Rule 12(b)( 6) in cases, such as this one,  centering on agreements whose terms are likely to be proved by oral testimony.  The unfairness arises from exempting the defendant from having to answer allegations that a contract was formed which,  if admitted,  would -

notwithstanding the lack of a writing - validate those

allegations.  Dismissal in such situations could unfairly

"derail the plaintiffs case pre-pleading and allow the defendant

to defeat a cause of action on an oral contract before the

plaintiff has any opportunity to seek an admission that a

contract existed." ALA Inc. v. CCAIR, Inc., 29 F.3d 855, 862

(3d Cir. 1994).  Additionally, a motion to dismiss based upon

New Jersey's Statute of Frauds N.J.S.A. 25:1-5(e) may be granted

only if it is clear from the face of the complaint or the

documents attached thereto that the statute of frauds presents

an insurmountable bar to plaintiff's cause of action.  Coastal

Group, Inc. v. Westholme Partners, Case No. Civ.A. 94-3010

(MTB), 1996 WL 33545605 at *4 (D.N.J. October 3, 1996).  Here,

that conclusion is far from certain, and dismissal at the

pleading stage is inappropriate.

A Third Party Beneficiary agreement which might otherwise

be barred by the Statute of Frauds may nonetheless be enforced

where, as here, there has been performance by one Plaintiff and

to do otherwise would work an inequity on the Plaintiff who has

performed.  In Graziano v. Grant, 326 N.J. Super. 328 (App. Div.

1999), for example, the court found that the plaintiff had fully

performed under the terms of the Third Party Beneficiary Act of

1999.

V. **Motion to Dismiss by Individual**
**Defendants A.G. Lafley, Kristy**
**Hershberger and Ralph Maresco Pursuant**
**to Fed. R. Civ. P. 12(b)(1) and Fed. R.**
**Civ. P. 12(b)(6).**

Plaintiffs submit this Memorandum of Law in opposition to
Individual Defendants A.G. Lafley, Kristi Hershberger and Ralph
Maresco's Motion to Dismiss a lawsuit necessitated by Defendants
A.G. Lafley, Kristi Hershberger and Ralph Maresco's calculated
and cynical conduct.

The Amended Complaint displays conduct beyond the bounds of
conventional commercial practices. Defendants seek its
dismissal by invoking conventional rhetoric. The facts, being
specific, explicit and damning, tell a very different story. In
arguing dismissal of Plaintiffs claim Defendants rely on
inapplicable case law and mischaracterize the facts alleged in
the complaint.

A. Retailers Marketing Group, Inc. has been added as a
Plaintiff and will be represented by counsel.

B. Individual Defendants A.G. Lafley, the CEO of P&G,
Kristy Hershberger and Ralph Maresco, Associate
Director of Retail Marketing Services, are Individual
Defendants employed by P&G.

C. P&G is the issuer of vendor coupons throughout the
United States, including the State of New Jersey.

D.   **EXHIBIT B.** Retailers Marketing Group, Inc., (RMG) has
     a written contract with P&G to redeem P&G vendor
     coupons in the United States, including the State of
     New Jersey.

E.   Individual Defendants have a relationship with the
     State of New Jersey via telephone conversations, the
     US Mail and personal visits to New Jersey.

F.   Individual Defendants have a contract with Plaintiffs
     RMG and William C. Martucci in this civil action.
     There are also contacts with other coupon clearing
     houses in the State of New Jersey, i.e., Atlantic
     Coupons Service, a division of Piks, Inc., 6 Hinchman
     Avenue, Denville, NJ 07834, as well as other coupon
     clearing services in the State of New Jersey.  There
     are chains of supermarkets and retail outlets that
     redeem P&G coupons that Individual Defendants do
     business with in New Jersey, i.e. ShopRite, (Wakefern
     Food Corporation) 5000 Riverside Dr., Keasbey, NJ
     08832.

G.   Individual Defendants have a direct relationship to
     Plaintiffs and the State OF New Jersey as follows:

     i.   Personal Jurisdiction.

     Individual Defendants do business in the State of New
     Jersey.  Kristy Hershberger and Ralph Maresco have had

telephone conversations and written communication with

Plaintiffs in New Jersey: A.G. Lafley, as CEO of P&G,

has set coupon policy and visits the State of New

Jersey in a business capacity. All coupons issued in

New Jersey have a direct relationship to Individual

Defendants' as employees and as an officer of P&G.

ii. Subject Matter Jurisdiction. Individual

Defendants have engaged in a significant amount of

business activity that constitutes Minimum Contracts

in the following:

> a. P&G sends coupons to the State of New Jersey
> via US Mail and media advertising – where the
> suit is filed,
>
> b. Individual Defendants do business in the
> State of New Jersey through the Internet,
> telephone calls direct mail and redemption of
> coupons. Defendants also take orders and perform
> clearinghouse audits in the State of New Jersey
> where the suite is filed,
>
> c. Individual Defendants contact P&G customers
> to discuss P&G published advertisements of
> coupons issued by P&G in the State of New Jersey
> where the suite is filed.

H. Plaintiff's claim states that the Diversity

Jurisdiction permits Plaintiffs to bring claims in

Federal Court where the claim exceeds $75,000, and the

parties are citizens of different states. 28 U.S.C. §

1331, 28 U.S.C. § 1332

I.   On August 20, 2014, Kristy Hershberger, an employee of
P&G, and Ralph Maresco, Associate Director of Retail
Marketing Services at P&G, telephoned the Plaintiffs
and stated the Plaintiffs could no longer do business
with P&G.  Hershberger and Maresco also stated P&G did
not have to honor any contracts between P&G and the
Plaintiffs.  Plaintiffs asked why P&G would not honor
their contractual obligation.  Mr. Maresco's answer
was: "I can do whatever I want and I choose not to
honor your vendor coupon submissions".  Since the
foregoing conversation on August 20, 2014, P&G has
been in violation of their contract with the
Plaintiffs.  According to the contract, retailer
coupons submitted for payment to P&G by the Plaintiffs
were to be paid directly to the Plaintiffs.  As of
this date P&G has not paid the retailers or
Plaintiffs.  As a result, unpaid retailers are dunning
the Plaintiffs and are threatening lawsuits against
Plaintiffs.  Kristy Hershberger and Ralph Maresco also
stated the Plaintiffs coupon submission was too high
as compared to the coupon volume of years 2011 and
2013.  Plaintiffs explained that approximately 3,000
advertising brochures had been mailed to retail

outlets in order to increase business, as is normal to increase business.

J.   On August 20, 2014, Ralph Maresco, the Associate Director of Retail Marketing Services at P&G, and Kristy Hershberger conference phoned Plaintiffs concerning Plaintiffs increase in vendor coupon dollar amount.  At this time Maresco notified Plaintiffs that because of Plaintiffs increase in vendor coupon volume submitted to P&G, P&G would no longer honor Plaintiffs vendor coupons for redemption.  Maresco notified Plaintiffs not to send any more coupons to P&G. Plaintiffs explained about an advertising program Plaintiffs conducted mailing 3,000 advertising mailers to retailers - of which Plaintiffs secured approximately 150 new retailers - therefore increasing Plaintiffs vendor coupon value.  Plaintiffs asked Maresco to weigh the facts, and were told by Maresco "I can do whatever I want and I choose not to honor your vendor coupon submissions".  Plaintiffs stated that this was not a just reply.  Maresco's response was "I can do and say whatever I want".

K.   Plaintiffs sent, by certified mail, to Sharon Abrams, Vice President and Chief Ethics & Compliance Officer

of P&G, all documentation showing the advertising
mailer that Plaintiffs mailed to retailers.
Plaintiffs also sent copies of retail service
agreements and proper documentation from all new
retailers signed by Plaintiffs and the retailers,  as
required by P&G's coupon contract.


L.    Rule 12 (B)(6).  In Conley v. Gibson, 355 U.S. 41
      (1952) the Supreme Court stated the interplay between
      Rule 8 (pleadings) and Rule 12(B)(6)as follows:

            The accepted Rule that a complaint should not
            be dismissed for failure to state a claim
            unless it appears beyond doubt that the
            Plaintiff can prove no set of facts in support
            of the claim which would entitle him to relief
            "355 U.S. at 45-46".

M.    In Bell Atlantic Corporation v. Twombly, 55 U.S.
      544 (2007) Defendants raised the questions that
      "no set of facts" existed.  Plaintiffs stated
      clearly that "once a claim has been stated
      adequately" Plaintiff showed a set of facts
      consistent with the allegations in the Amended
      Complaint.  *Ibid* at 563.  In Conley an adequate
      complaint can survive.

      The Court further stated in Ashcroft v. Iqbal, 550 U.S. 662
(2009) "to survive a Motion to Dismiss a complaint must contain

sufficient factual matter, accepted as true." This was stated
in the Amended Complaint.

When a Complaint is inadequate Leave to Amend is common.

Butt v. United Brotherhood of Carpenters & Joiners of
America, No. 09-4285, 2010 W.L. 2080034 (E.D. PA May
19,2010).

Plaintiffs claims against the Defendants "as a matter of
law" have already been demonstrated in the Amended Verified
Complaint factual evidence that the Defendants played a major
part.

N.    Kristi Hershberger and Ralph Maresco are employed by
      Proctor and Gamble, Inc. (P&G) in supervisory
      positions.  Hershberger and Maresco were the
      Plaintiffs contact persons at P&G's coupon department.
      Plaintiffs communicated with Hershberger and Maresco
      on numerous occasions. They informed Plaintiffs that
      they would visit Plaintiffs clearinghouse in New
      Jersey.

O.    Plaintiffs were referred to Sharon Abrams by
      Hershberger and Maresco.  Ms. Abrams is Vice President
      and Chief Ethics and Compliance Officer at P&G.  Upon
      Ms. Abrams request the Plaintiffs forwarded to her the
      contract between Plaintiffs and P&G and the Plaintiffs
      advertising material.  The information sent to Ms.

Abrams was the same information previously sent to
Kristi Hershberger and Ralph Maresco upon their
request for documentation.

P.    Kristi Hershberger and Ralph Maresco, and Ms.
Abrams, requested an explanation why Plaintiffs coupon
volume increased.  Plaintiffs explained in great depth
and detail the reason for the increased volume.
Plaintiffs sent each individual Defendant a copy of
Plaintiffs advertising brochure.  Plaintiffs created
the brochure to increase their business.  The
Plaintiffs question is, why in America is it a crime
to better ones company and ones self?  According to
P&G to better ones business is a crime.

Q.    **EXHIBIT B.**  The contract between P&G and Plaintiffs
had nothing to do with any violation of their
contract, "Coupon Clearing House Authorization", as
the Defendants stated in the Motion to Dismiss Brief.

R.    **EXHIBIT H.** Plaintiffs relationship with P&G's CEO A.G.
Lafley is understood that as the CEO of P&G he assumes
the responsibility of P&G's actions legally and
morally.  Quoting the New York Times on October 13,
2015, Mr. Lafley acknowledges full responsibility for
the consumer products division.  This in itself

conveys his position of overseer of P&G's corporate

coupon business.

http://www.wsj.com/articles/p-g-ceo-takes-responsibility-for-companys-performance-1444760685

S.  Kristi Hershberger and Ralph Maresco as employees of

P&G have exercised a personal relationship with

Plaintiff William C. Martucci by degrading Martucci

Personally, demonstrating a personal vendetta against

Martucci.

T.  **EXHIBIT B.** Retailers Marketing Group, Inc. (RMG) does

not lack standing. P&G and RMG have a contract

between them. P&G is obligated to honor the contract.

P&G's counsel would direct the Court to believe that

no contract exists between Proctor and Gamble and

Retailers Marketing Group, Inc.

U.  **EXHIBIT I.** (Open Invoices) Upon information and

belief the Defendants P&G, Kristi Hershberger and

Ralph Maresco wrongfully and illegally exercised

dominion and control over funds rightfully belonging

to the Plaintiffs and retailers that are represented

by Plaintiffs, which actions constitute an illegal

tortuous conversion of funds. P&G has not paid

Plaintiffs for coupon open invoices. Ralph Maresco

stated that the open invoice would never be paid.

V.   Upon information and belief P&G's CEO, A.G. Lafley
     violated *Uberrimae Fidel* that states one must act in
     utmost good faith and requires making known all
     material facts influencing the contract.   The
     Defendants P&G did not maintain a fiduciary
     relationship with Plaintiffs.   All parties must have
     equal knowledge of a matter in conflict.   If P&G did
     not disclose to Plaintiffs any and all matters in
     conflict, then P&G did not act for, or give advice
     for, the benefit of Plaintiffs within the scope of
     their relationship.   The contractual relationship
     between P&G and the Plaintiffs supports that there was
     a fiduciary relationship, as stated in the Sherman
     Act.   Krakowski v. Eurolynx Properties, Ltd. (1955).

W.   On August 20, 2014, Kristi Hershberger and Ralph
     Maresco, both employees of P&G, telephoned the
     Plaintiffs and stated the Plaintiffs could no longer
     do business with P&G.   Hershberger and Maresco also
     stated P&G did not have to honor any contracts between
     P&G and the Plaintiffs.   Plaintiffs asked why P&G
     would not honor their contractual obligation.   Mr.
     Maresco's answer was "I can do whatever I want and I
     choose not to honor your P&G coupon submissions".
     Since the foregoing conversation on August 20, 2014,

P&G has been in violation of their contract with the
Plaintiffs. According to the contract, retailer
coupons submitted for payment to P&G by the Plaintiffs
were to be paid directly to the Plaintiffs. As of
this date P&G has not paid the retailers or
Plaintiffs. As a result, unpaid retailers are dunning
the Plaintiffs and are threatening lawsuits against
Plaintiffs. Kristi Hershberger and Ralph Maresco also
stated the Plaintiffs coupon submission was too high
as compared to the coupon volume of years 2011 and
2013. Plaintiffs explained that approximately 3,000
advertising brochures had been mailed to retail
outlets in order to increase business, as is normal to
increase business. All advertising brochures, plus
retailers' verification that the retailers were in
good standing, as required by the P&G contract, were
documented. All documentation was forwarded to Kristi
Hershberger at P&G on a few occasions during the
period of October of 2013 through April in 2015.

**VI.  Defendants Reckitt Benckiser, Philip
Morris USA, Inc.("Philip Morris"),
Georgia Pacific, LLC ("Georgia
Pacific"), Bausch and Lomb ("BL"),
Abbott/Ross Labs, Inc.("Abbott"), and
collectively, the "Manufacturer
Defendants", filed a Motion to Dismiss
under Fed. Rule 12(b)(6.**

Under Fed. R. Civ. P. 12(b)(6), a "defendant bears the
burden of showing that no claim has been presented." Hedges
v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  When
reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6),
a court merely seeks a short and plain statement of the claim
showing that the pleader is entitled to relief.  See Fed. R.
Civ. P. 8(a), Rowen Petroleum Properties, LLC v. Hollywood
Tanning Systems, Inc., Civ. No. 08-4764 (NLH), 2009 WL 1085737
at *2 (D.N.J. Apr. 20, 2009).  A complaint needs only contain
sufficient factual matter to "state a claim to relief that is
plausible on its face. "Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007).  In determining the sufficiency of a
complaint, the Court must accept as true all of a plaintiff's
well-pled factual allegations and construe the complaint in
the light most favorable to the plaintiff.  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).
specifically referred to therein.  Gonzalez v. King
Soopers/Kroger Inc. #76, No. 14-CV-00773-KMT, 2014 WL 2862262
(D. Colo. June 24, 2014) ("In considering a motion to dismiss

pursuant to rule 12(b)(6), it is improper for the court to

consider materials from outside of the pleadings"), see also

In re Total Containment, Inc., 335 B.R. 589, 607 (Bankr. E.D.

Pa. 2005) "The Court may simply deny a Rule 12(b)(6) motion to

dismiss which relies on facts asserted outside the pleadings."

Hilton Hotels Corp. Texas Occupational Injury Ben. Plan v.

Jurss, CIV.A. H-07-3104, 2007 WL 2987977 (S.D. Tex. Oct. 10,

2007). On this basis the Court should consider dismissing

defendants' motion due to their brief asserting facts not

alleged or referred to in the pleading, not authenticated and

not made available to Plaintiffs.

Defendants first proffered ground for dismissal is that

the Complaint fails to adequately plead the existence of a

contract, partially on the ground that Plaintiffs were not,

per the allegations, a truly Third Party Beneficiary of the

contract. Defendants are mistaken, however, both because the

law is highly flexible regarding this aspect of a Third Party

Beneficiary and because the allegations do in fact demonstrate

mutuality of responsibilities despite the division of the

contract that was the logical premise of the Third Party

Beneficiary.

Under New Jersey law, a contract is a "special

combination of two or more persons where in some specific

venture, a profit is jointly sought without any actual corporate designation." Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962). It has also been described as "an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits." Id. This formulation is critical to this litigation because among Plaintiff's claims is that, despite the existence of such an agreement, defendants breached its terms by their refusal to honor the Plaintiffs as a Third Party Beneficiary.

While a Third Party Beneficiary is like any business combination in that its terms are predicated on an agreement between the parties, Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J. Super. 282, 289 (App. Div. 1979), the Third Party Beneficiary relationship may be less formal. Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co., 611 F. Supp. 665, 679 (D.N.J. 1985). A Third Party Beneficiary may be implied wholly or in part from the acts and conduct of the parties. Id. Even where there is an explicit agreement, it "need contain no particular form of expression, nor is formality of execution necessary" to its terms to be enforceable. Wittner, 72 N.J. Super. at 444. A Third Party Beneficiary's understanding will contain some or all of the following:

A.    A contribution by the parties of money, property,
      effort, knowledge, skill or other asset to a common
      undertaking,

B.    Coupon interest in the subject matter of the contract
      agreement,

C.    A right to participate in the profits, i.e., $.08
      handling fees and fees paid by manufacturers to
      Inmar/CMS.

*Id.*, quoting 4 Samuel Williston, Williston on Contracts, § 318A,
at pp. 563-65 (4th ed. 1990).  "Between the parties to a joint
venture, a common element is a fiduciary relationship."  *Id.*

     Seizing on this enumeration of features typically found in
a contract, Defendants assert that the Complaint fails because
it does not allege that Plaintiffs retained a sufficient share
of control over the coupon accounts serviced by Defendants
Inmar/CMS so as to constitute "mutual control of the agreement."
Defendants, however, are mistaken regarding the legal standard
for pleading a Third Party Beneficiary.  As the language of
Wittner makes clear, a court examining a complaint to determine
if a contract or Third Party Beneficiary has been adequately
pled does not strictly test for the presence of each "element"
where a contract or Third Party Beneficiary is alleged.
Repeating the words of the Appellate Division in Wittner, "There
is substantial agreement that **some or all** of the following

Page 65 of 74

elements . must be present." 72 N.J. Super. at 444, see also
Rainbow Apparel, Inc. v. KCC Trading, Inc., Case No. 9-CV-05319
(DMC-MF), 2010 WL 2179146 at *11 (D.N.J. May 26,2010
(recognizing Third Party Beneficiary contract based upon "some
or all" of the listed elements).

Thus it is not enough merely for a defendant to assert that
absent one specific component of the contract or Third Party
Beneficiary "concept," a pleading cannot be said to have made
out a claim premised on the existence of a contract or Third
Party Beneficiary. Rather, the Court must consider the facts
alleged and determine whether a Third Party Beneficiary was
formed being guided, as its primary consideration, by the
intention of the parties. Weichert Co. Realtors v. Ryan, 128
N.J. 427,435 (1992). Looked at differently, the leading cases
are clear that the "element" of mutual control, even if viewed
as a but-for component for finding a contract or Third Party
Beneficiary, is itself defined broadly and pragmatically. As
this Court explained in Hellenic Lines, supra:

> Although a joint venture is not present absent a
> right of mutual control, mutual control over
> every aspect of the venture need not be actual.
> "A joint adventurer may entrust actual control of
> the operation to his co-adventurer and it still
> remains a joint venture." Wittner, 178 A.2d at
> 676. Similarly, joint venturers may agree that
> responsibility for particular tasks shall reside
> with less than all the venturers.

611 F. Supp. at 679. Unsurprisingly, defendants' brief ignores the Hellenic Lines decision, presumably because the quoted language is favorable to plaintiff. Indeed, consummate with the formula of divided responsibilities described in Hellenic Lines and Wittner, Plaintiffs had longstanding relationships with coupon customers in the United States market. Plaintiffs did "place" the servicing of these accounts "in Plaintiffs hands" pursuant to the contract agreement that was the point of the Third Party Beneficiary or, more accurately, that was half the point. But the Complaint cannot be construed, as Defendants suggest, as alleging something so illogical as a relationship where Defendants ceased to do anything to contribute to the Third Party Beneficiary.

The following coupon manufacturers have issued coupons to residents of New Jersey and residents throughout the United States. Plaintiffs have received coupon submissions from retailers in New Jersey and throughout the United States for redemption of the coupons issued by the following named manufacturers: Defendants Reckitt Benckiser, Philip Morris USA, Inc.("Philip Morris"), Georgia Pacific, LLC ("Georgia Pacific"), Bausch and Lomb ("BL"), Abbott/Ross Labs, Inc.("Abbott"), and collectively.

The following manufacturers claim to have no relationship with Plaintiffs.  The following demonstrates that a relationship does exist.

**EXHIBIT J.**  Reckitt Benckiser

- Total number of coupons submitted to Plaintiffs - 8,238

- Dollar amount of coupons submitted $6,904.51

- Plaintiffs submitted invoices to Reckitt Benckiser for payment

- All but $292.66 has been paid to Plaintiffs by Reckitt Benckiser.

Proof of Reckitt Benckiser's relationship with Plaintiffs.


**EXHIBIT K.**  Philip Morris USA

- Total number of coupons submitted to Plaintiffs - 1,346

- Dollar amount of coupons submitted $2,058.65

- Plaintiffs submitted invoices to Philip Morris for payment

- All but $219.66 has been paid to Plaintiffs by Philip Morris.

Proof of Philip Morris's relationship with Plaintiffs.


**EXHIBIT L.**  Georgia Pacific Corp.

- Total coupons submitted to Plaintiffs - 8,201

- Dollar amount of coupons submitted $9,314.13

- Plaintiffs submitted invoices to Georgia Pacific for payment

- All but $83.71 has been paid to Plaintiffs by Georgia Pacific.

Proof of Georgia Pacific's relationship with Plaintiffs.

**EXHIBIT M.** Bausch and Lomb

- Total coupons submitted to Plaintiffs - 512

- Dollar amount of coupons submitted $1,963.92

- Plaintiffs submitted invoices to Bausch & Lomb for payment

- All but $736.92 has been paid to Plaintiffs by Bausch & Lomb.

    Proof of Bausch and Lomb's relationship with Plaintiffs.

**EXHIBIT N.** Abbott Labs/Ross, Inc.

- Total coupons submitted to Plaintiffs - 2,239

- Dollar amount of coupons submitted $6250.26

- Plaintiffs submitted invoices to Abbott Labs for payment

- All but $272.53 has been paid to Plaintiffs by Abbott Labs.

    Proof of Abbott Labs relationship with Plaintiffs.

### CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

This matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

June 20, 2016

William C. Martucci
Plaintiff Pro Se

## REQUESTED RELIEF

**Wherefore,** Plaintiffs Pray for Judgment against Defendants
Proctor & Gamble, Inc., Inmar Inc., Carolina Marketing Service,
R.J. Reynolds Tobacco, Nestle SA and USA, A.J. Lafley, Christie
Herschberger, Ralph Maresco, David Mounts, and Rich Schmidt.

    A.    For an order awarding punitive damages as follows:

        1.    Procter and Gamble, Inc. in the amount of Five
Million Dollars ($5,000,000.00),

        2.    Inmar, Inc. in the amount of Five Million Dollars
($5,000,000.00),

        3.    Carolina Marketing Service in the amount of Five
Million Dollars ($5,000,000.00),

        4.    R.J. Reynolds Tobacco in the amount of Five
Million Dollars ($5,000,000.00),

        5.    Nestle SA and USA in the amount of Five Million
Dollars ($5,000,000.00),

        6.    A.G. Lafley, CEO of Proctor & Gamble, Kristy
Herschberger and Ralph Maresco, employees of P&G,
named in this Complaint in the amount of Five
Million Dollars ($5,000,000.00) individually,

        7.    David Mounts and Rich Schmidt, employees of
Inmar, Inc. named in this Complaint in the amount

of Five Million Dollars ($5,000,000.00)

individually.

B.   For an order awarding compensatory damages as follows:

1.   Procter and Gamble, Inc. in the amount of Ten

Million Dollars ($10,000,000.00),

2.   Inmar, Inc. in the amount of Ten Million Dollars

($10,000,000.00),

3.   Carolina Marketing Service in the amount of Ten

Million Dollars ($10,000,000.00),

4.   R.J. Reynolds Tobacco in the amount of Ten

Million Dollars ($10,000,000.00),

5.   Nestle SA and USA in the amount of Ten Million
Dollars ($10,000,000.00),

6.   A.G. Lafley, CEO of Proctor & Gamble, Kristy

Herschberger and Ralph Maresco, employees of P&G,

named in this Complaint in the amount of Ten

Million Dollars ($10,000,000.00) individually,

7.   David Mounts and Rich Schmidt, employees of

Inmar named in this Complaint in the amount of

Ten Million Dollars ($10,000,000.00)

individually.

C.   For an order awarding actual damages as follows:

1.   Procter and Gamble, Inc. in the amount of Nine

Million Five Hundred Thousand Dollars
($9,500,000.00),

2. Inmar, Inc. in the amount of Nine Million Five
   Hundred Thousand Dollars ($9,500,000.00),

3. Carolina Marketing Service in the amount of Nine
   Million Five Hundred Thousand Dollars
   ($9,500,000.00),

4. R.J. Reynolds Tobacco in the amount of Nine
   Million Five Hundred Thousand Dollars
   ($9,500,000.00),

6. Nestle SA and USA in the amount of Nine Million
   Five Hundred Thousand Dollars ($9,500,000.00),

7. A.G. Lafley, CEO of Proctor & Gamble, Kristy
   Herschberger and Ralph Maresco, employees of P&G
   named in this Complaint in the amount of Nine
   Million Five Hundred Thousand Dollars
   ($9,500,000.00), individually,

8. David Mounts and Rich Schmidt, employees of
   Inmar Inc. named in this Complaint in the amount
   Nine Million Five Hundred Thousand Dollars
   ($9,500,000.00) individually,

D. For an order awarding future, incidental and other
   relief as the Court may deem just, proper and
   equitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment against

Defendants, Proctor & Gamble Company, Inmar Inc., Carolina

Marketing Service, R.J. Reynolds Tobacco, and Nestle SA and USA

individually, as follows:

A.   For future damages in an amount to be determined at trial,

B.   For incidental damages in an amount to be determined at trial,

C.   For actual damages in the amount of Nine Million Five Hundred Thousand Dollars ($9,500,000.00) in violation as the Complaint states,

D.   For trebling of the damages award as followed by law,

E.   For exemplary damages to punish the Defendants and set an example for others,

F.   For the costs of the suit herein incurred,

G.   For an order of this Court enjoining Defendants Proctor & Gamble Company, Inmar Inc., Carolina Marketing Service, R.J. Reynolds Tobacco, and Nestle SA and USA and each of them, and their agents, servants, employees and all persons acting in concert with, or for them, for using or causing to be used Plaintiffs Wire tapped conversations,

H.   For other and further reliefs as the Court may deem just and proper.

June 20, 2016          BY:   _____

William C. Martucci
Plaintiff Pro Se

## **VERIFICATION**

The undersigned, for himself, declares:

I am the Plaintiff in the above entitled action.  I have read the foregoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe these to be true.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

June 20, 2016

William C. Martucci
Plaintiff Pro Se

**PLAINTIFFS DEMAND TRIAL BY JURY**

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

This matter in controversy is not the subject of any other
action pending in any court, or of any pending arbitration or
administrative proceeding.

I declare under penalty of perjury under the laws of the
United States of America that the foregoing is true and correct
to the best of my knowledge.

Date: 6/20/16

William C. Martucci
Plaintiff Pro Se

**JURY TRIAL DEMAND**

Plaintiffs requests a jury trial
for all claims a jury is available.

Date: 6/20/16

BY:

William C. Martucci
Plaintiff Pro Se

**CERTIFICATION**

I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

Date: 6/20/16                    BY:

William C. Martucci
Plaintiff Pro Se

**PROOF OF MAILING**

A copy of this Second Amended Complaint was sent by First Class Mail to the Honorable Jose L. Linares, U.S. Court House, 50 Walnut Street, Room 5054, Newark, NJ 07101 and by Electronic Filing to each of the Defendants named in the Complaint or their attorney.

Date: 6/20/16                    BY:

William C. Martucci
Plaintiff Pro Se